Marie Magdalene FEENEY, Ancillary Administratrix of the Estate of Arthur George Feeney, Deceased, Plaintiff,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George Stieringer, deceased, Interstate Motor Freight System and Carlus Leo Quigley, Defendants.

Frances Feeney COLELORI, Plaintiff,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George Stieringer, deceased, Interstate Motor Freight System, Carlus Leo Quigley and Marie Magdalene Feeney, Ancillary Administratrix of the Estate of Arthur G. Feeney, deceased, Defendants.

Frances Feeney COLELORI, Administratrix of the Estate of Joseph A. Colelori, deceased, Plaintiff,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George Stieringer, deceased, Interstate Motor Freight System, Carlus Leo Quigley and Marie Magdalene Feeney, Ancillary Administratrix of the Estate of Arthur G. Feeney, deceased, Defendants.

Frances Feeney COLELORI, Administratrix of the Estate of Richard E. Colelori, minor, deceased, Plaintiff,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George Stieringer, deceased, Interstate Motor Freight System, Carlus Leo Quigley and Marie Magdalene Feeney, Ancillary Administratrix of the Estate of Arthur G. Feeney, deceased, Defendants.

Bernice H. STIERINGER, Administratrix of the Estate of Helena M. Stieringer, deceased, Plaintiff,

v.

Marie Magdalene FEENEY, Ancillary Administratrix of the Estate of Arthur G. Feeney, deceased, Interstate Motor Freight System and Carlus Leo Quigley, Defendants.

INTERSTATE MOTOR FREIGHT SYSTEM and Carlus Leo Quigley, Defendants and Third Party Plaintiffs,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George A. Stieringer, Deceased, Third Party Defendant.

Marie Magdalene FEENEY, Ancillary Administratrix of the Estate of Arthur G. Feeney, deceased, Defendant and Third Party Plaintiff,

v.

Bernice H. STIERINGER, Administratrix of the Estate of George A. Stieringer, deceased, Third Party Defendant.

INTERSTATE MOTOR FREIGHT SYSTEM and Carlus Leo Quigley, Plaintiffs,

v.

Marie Magdalene FEENEY, Ancillary Administratrix of the Estate of Arthur G. Feeney, Defendant (counterclaim in action No. 1).

C. A. Nos. 6195, 6296–6298, 6301.

United States District Court
W. D. New York.
Jan. 14, 1957.

Desmond & Drury, Buffalo, N. Y. (John E. Drury, Jr., Buffalo, N. Y., of counsel), for Marie Magdalene Feeney, Ancillary Administratrix of the Estate of Arthur George Feeney, deceased.

Trimper & Conroy, Buffalo, N. Y. (J. Murray Conroy, Buffalo, N. Y., of counsel), for Frances Feeney Colelori, Frances Feeney Colelori, as Administratrix of the Estate of Joseph A. Colelori, deceased, and Frances Feeney Colelori, as Administratrix of the Estate of Richard E. Colelori, minor, deceased.

Joseph A. Marion, Buffalo, N. Y., for Bernice H. Stieringer, Administratrix of the Estate of Helena M. Stieringer, deceased.

Mortimer A. Sullivan, Buffalo, N. Y. (Joseph Brownstein, Buffalo, N. Y., of counsel), for Interstate Motor Freight System and Carlus Leo Quigley.

Adam, Smith, Brown & Starrett, Buffalo, N. Y. (Howard Starrett, Buffalo, N. Y., of counsel), for Bernice H. Stier-

**542**

inger, Administratrix of the Estate of George Stieringer, deceased.

John H. Napier, Buffalo, N. Y. (Roy Ohlin, Buffalo, N. Y., of counsel), for Marie Magdalene Feeney, Ancillary Administratrix of the Estate of Arthur G. Feeney. Defendant and Third Party Plaintiff.

MORGAN, District Judge.

The above causes were consolidated by order of my predecessor, the late Honorable John Knight, on October 11, 1954, wherein it was ordered that the plaintiff in the first action above listed was to have the right to open and close. The issues were complicated; the trial began on April 24, 1956 and concluded May 4, 1956. Six attorneys actively participated.

The accident occurred in the State of Pennsylvania at the intersection of route U.S. 5, which at that point ran in a generally easterly and westerly direction, and route 89, which at that point ran in a generally northerly and southerly direction, near Northeast, Pennsylvania. Hence the substantive law of Pennsylvania prevailed. The requisites for the diversity of citizenship were present and it being tried in the Western District of New York, the adjective law of New York applied as well as the Federal Rules of Civil Procedure, 28 U.S.C.A.

The plaintiff, Marie Magdalene Feeney, was not a passenger. Her husband, Arthur George Feeney, who was killed as a result of the accident, was driving a Pontiac automobile in a northerly direction on route 89. In the front passenger seat was his sister, Frances Feeney Colelori, plaintiff in action #2, and in the rear seat were the latter's husband, Joseph A. Colelori, and their son, Richard E. Colelori, a minor. The automobile of the defendant, George Stieringer, whose estate was joined in actions #1, #2, #3, #4, #6 and #7, as defendants, and in the 5th action as plaintiff, was being operated in an easterly direction on U.S. 5. The defendant, Interstate Motor Freight System, owned a tractor trailer unit which was being driven in a westerly direction by its employee and driver, Carlus Leo Quigley.

There was considerable conflict in the testimony, but for the purposes of this decision, a general review will suffice. The testimony was that the Feeney car was proceeding north on route 89. Its speed was variously estimated from a stop prior to its entrance into route 5 in an easterly direction to 40 to 45 miles per hour. The point of intersection was at the low dip of two hills, or crests, one approximately one thousand feet westerly, and one approximately one thousand feet easterly of the intersection. The exact grade was not given, but it was described as rolling country. The Stieringer Chevrolet was proceeding easterly on a down slope and its speed was at all times stated to be over 50 miles per hour, and very fast. The Interstate Motor Freight System tractor trailer was proceeding westerly, also on a down grade, on the easterly crest above described, and its speed was variously estimated from Quigley's statement of just releasing the brake to 30 to 40 miles per hour.

As the Stieringer car attempted to pass the Feeney car, a collision occurred about 50 feet easterly of the intersection of routes 89 and 5 when the right front of the Stieringer car collided with the left front of the Feeney automobile. The Feeney car was demolished. The Stieringer car was propelled into the air, flipped and landed upside down, with its top breaking the windshield of the Interstate Motor Freight System tractor trailer and resting on the hood of the tractor. Mr. and Mrs. Stieringer, the occupants of the Chevrolet, were instantly killed, Joseph A. Colelori and Richard E. Colelori were killed, Frances Feeney Colelori was seriously injured, although she gave normal birth to a baby girl on December 7, 1953.

Carlus Leo Quigley was rendered unconscious, his last recollection being that of turning toward the north shoulder of route 5. The Feeney Pontiac car skidded 104 feet, the tractor trailer 210 feet in an arc and carried the Chevrolet with it.

The tractor trailer was a General Motors Corporation 1953 model, six months in service, and had been driven by Carlus Leo Quigley from the date of purchase to the time of the accident; it was in good mechanical condition, having been checked each month and bore a safety sticker at the time of the accident, indicating a test by the Safety Department of the defendant, Interstate Motor Freight System, and by the Interstate Commerce Commission. It had ten gears and was in fourth gear at low side at the easterly crest above described. Quigley testified that he noted other cars crossing route 5 on 89 after he "broke over the hill", and, according to his testimony, the Stieringer car was in his lane of traffic when he first saw the two cars side by side; the Stieringer car swerved south to get into its own lane. He applied his brakes, pulled toward the north shoulder of the road, saw the Stieringer car as it flipped in front of him, and that is the last he remembered.

The defendants, Interstate Motor Freight System and Carlus Leo Quigley, moved under Rule 50 of the Federal Rules of Civil Procedure for a judgment, notwithstanding the verdict, or in the alternative, for a new trial upon the ground that the verdicts were contrary to law, against the weight of evidence, and because of prejudicial errors and rulings made during the conduct of the lengthy trial.

■ The motion for a judgment, notwithstanding the verdict, is denied. Wilkerson v. McCarthy, 1947, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497.

■ However, defendants' alternative motion is based upon other considerations. The trial court may weigh the evidence, set aside a verdict and grant a new trial upon proper grounds, even though there was substantial evidence to prevent the direction of a verdict. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, at page 251, 61 S.Ct. 189, 85 L.Ed. 147.

It is no answer to a motion for a new trial to cite cases such as Tennant v. Peoria & P. U. Ry. Co., 1944, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, as authority for the proposition that questions of fact are to be decided by the jury and the law by the court. That and similar cases deal with the power of the court to direct a verdict. The direction of a verdict finally, as a matter of law, substitutes the determination of the court on questions of fact for that of a jury. The granting of a motion for a new trial does not, but merely requires that another jury determine the facts, for reasons which in the interest of justice are compelling.

■ When a new trial is ordered, it should be done cautiously and prudently. It is proper and helpful to the party whose verdict is upset, for the court to point out specifically the reasons for the action of the court. Galloway v. United States, 319 U.S. 372, at page 411, 63 S.Ct. 1077, 87 L.Ed. 1458, and Montgomery Ward & Co. v. Duncan, 311 U.S. 243, at page 253, 61 S.Ct. 189, 85 L.Ed. 147.

It was urged that the court erred in permitting two attorneys to conduct the trial on behalf of one party, namely the Estate of Arthur George Feeney.

The original order consolidating all of the above actions contained no restrictions on counsel for the respective parties herein. This particular point of procedure is covered by Rule 161 of the Rules of Civil Practice, New York, which provides that "one counsel only on each side shall examine or cross-examine a witness. One counsel only on each side shall sum up * * *" However, within the framework of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, procedure is governed by the Federal Rules of Procedure and the substantive rights and liabilities by the law of the State. In this case, the substantive law of Pennsylvania prevailed as the situs of the accident under the conflict of law theory. The practice and procedure in the district courts is founded upon Sec. 2072, Title 28 U.S.C.A., "The Supreme Court shall have the power to prescribe * * * pleadings, and motions, and the practice and procedure of the district court of the United States * * *"

An examination of the Federal Rules does not reveal that the situation which arose in the instant case was covered by any specific rule. In the absence of a specific rule to govern, this court looked to Rule 83 for guidance, which states that "In all cases not provided for by rule, the district court may regulate their practice in any manner not inconsistent with the rules."

In Newell v. O. A. Newton & Son Co., D.C., 95 F.Supp. 355, 360, the court said in referring to Federal Rule 83, "The same power which grants discretion to adopt or not adopt a local rule operates also to give power to do what may be necessary to secure justice in matters pending."

■ In Guaranty Trust Co. of N. Y. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, the court avoided a direction between matters substantive and procedural, pointing that, before a Federal Court could be bound by a State law, whether procedural or substantive, it must of necessity involve the right of a party to recover. The cases involved complaints and counterclaims, which resulted in the plaintiff in action #1 being represented by an attorney as plaintiff and the same party, as defendant where counterclaims were interposed in the above actions, having another attorney to defend those interests. The interest of Marie Magdalene Feeney, as Ancillary Administratrix, in her capacity as plaintiff and defendant were so divergent and complex that the interests of justice dictated the court in its discretion to permit favoring two counsel.

Prior to the close of the evidence and at least twenty-four hours prior to the charge, the court suggested to counsel a listing of the cases to assist the jury in its deliberations. No such list being produced, the court, on its own initiative just prior to its charge, dictated a listing and mentioned to the jury its possible availability. Some of counsel objected to its submission and no list was submitted by anyone.

The jury deliberated for a considerable length of time and then returned, and asked for an interpretation of Pennsylvania law with these three written questions: (1) Pennsylvania law in regards to speed in its relationship to contributory negligence. (2) When does a driver's responsibility begin when witnessing an accident ahead of him. (3) Define reasonable care in this instance. After instructions on those questions, the jury was asked if it wished to know anything further. Whereupon, this colloquy ensued:

Juror #7: None your Honor. One more thing. We never received that paper.

The Court: Counsel had some objections as to that which the Court prepared and that is why it wasn't sent to you.

Juror #7: Would it be possible to have that typed up and send it down to us; those three things?

The Court: I am sorry that isn't permissible and we do not give written charges to jurors.

The jury retired from this colloquy at 8:55 P.M., May 4, 1956. At 1 P.M. on May 5th, 1956, this further colloquy ensued:

The Court: Ladies and Gentlemen of the Jury, I have had handed to me this hand written message. "The jury is hopelessly deadlocked on the matter of contributory negligence. Certain members of the jury wish to yield temporarily and discuss monetary settlement of the case, which has not yet been discussed, except for a period of about five minutes. Other members of the jury feel we

cannot discuss monetary settlement until complete agreement is reached on blame. We need help desperately. Is there any way you can help us, advise us or rule on the issue of what we can discuss formally and what we cannot discuss." * *

Juror #6: Your Honor, for the benefit of the jury, I would like for you to elaborate on contributory negligence.

At about 5 P.M. on May 5, 1956, the jury was returned to the courtroom. The following discourse occurred:

The Court: You have had the matter for a considerable length of time and no report having been received I should like to inquire whether you feel that any further deliberation would be of value or if you feel you are hopelessly deadlocked?

Juror #8: I think we have made some progress since we last talked to you. I think another four hours would clear it up. We have found for some and not for others.

The Court: Is that the general feeling of the jury?

Juror #6: No, it isn't. I don't believe another four hours would be a solution to our problem.

The Court: Does the jury generally feel a little more time would be of some value? This has caused you inconvenience and has caused a considerable amount of time. I

would like to know what the majority feel. May I have an indication by a showing of hands whether the majority feel that more time, without specification as to the length of time, would be of value. It appeared to the Court that the majority of the jurors raised their hands.

After another hour of deliberation, the jury was plainly confused, as evidenced by the testimony appended hereto.

Thereafter, further conversations were had which convinces me that there are compelling reasons in the interest of complete justice to all parties why the motion for a new trial should be granted in each case.

The law of Pennsylvania requires a separate verdict for any wrongful death action and survival action. The verdicts in this case were not separately stated. Purdon's Pennsylvania Statutes Annotated, Title 12, §§ 1601–1604, Death Statute. 20 Purdon's Statute, Sec. 320.-601 and 320.607; 20 P.S.Pa. ch. 3 Appendix Sec. 772. Survival Statute. Burns v. Goldberg, 3 Cir., 210 F.2d 646. Motion for a new trial granted in each case.

APPENDIX

The Clerk: Ladies and Gentlemen of the Jury, have you agreed upon a verdict?

Juror: We have.

The Clerk: How do you find?

Juror: We find for the plaintiff Marie Magdalene Feeney, suing in behalf of Arthur Feeney, against the Interstate Motor Freight and the Estate of George and Helena Stieringer in the amount of $40,000. We find for the plain-

tiff Frances Feeney Colelori against the Interstate Motor Freight and the Estate of George and Helena Stieringer in the amount of $47,257.88. No cause of action in the suit of Colelori against Feeney. No cause of action in the suit of Bernice Stieringer against Interstate and Feeney and no cause of action in suit of Interstate and Quigley and no cause of action in the Stieringer case.

The Court: Do you have that written out Mr. Foreman? Will you repeat that?

Juror: We find for the plaintiff Marie Magdalene Feeney suing in behalf of Arthur Feeney against the Interstate Motor Freight and the Estate of George and Helena Stieringer in the amount of $40,000. We find for the plaintiff Frances Colelori against the Interstate Motor Freight System and the Estate of George and Helena Stieringer in the amount of $47,257.88.

The Court: There are three separate Frances Feeney Colelori actions; one as Administratrix of Joseph and one as Administratrix of Richard, and one individually. Does the jury have a verdict in each action?

Juror: You mean the amounts we set?

The Court: Frances Feeney Colelori sued individually for her own damages under the law the several defendants named. She had another action as Administratrix of Joseph and a third action as Administratrix of Richard, the son. You gave the Clerk the sum amount in the name of Frances Feeney Colelori and I ask you if you have as a jury found that collectively or if you have individual sums as a jury for each of those three actions?

Juror: That $47,257.88 was collectively for all three.

The Court: Do you have any separate verdict for Frances Feeney Colelori individually?

Juror: Yes, we had separated them.

The Court: That I wish you would give the Clerk.

Juror: For her separately was $5,000.

The Court: Do you have an amount as a jury for Frances Feeney Colelori as Administratrix of Joseph, the husband?

Juror: Yes, $23,400.

The Court: And do you have a verdict for Frances Feeney Colelori as Administratrix of Richard, the son?

Juror: Yes, $12,600. That is for the child that is still living. $5,000 was for Richard that was killed in the accident.

The Court: Each of your unanimous verdicts are against what defendants?

Juror: Interstate Motor Freight System and Estates of George and Helena Stieringer.

The Court: And did you find, as a jury unanimously, any verdict in the case as to the defendant Quigley, in the amounts you have stated?

Juror: No.

The Court: The defendants named were the Estate of George Stieringer, in the cases you have indicated, the Estate of Helena Stieringer and Interstate Motor Freight System and you have not found a verdict as against Carlus Quigley. It will be necessary for you to find, in order to complete the case, a verdict of either cause or no cause so far as the defendant Quigley is concerned in each of these cases. The last thing you said was you found no cause of action as to—

Juror: Interstate and Quigley to recover damages.

The Court: Did you say something about some other estates?

Juror: Bernice Stieringer against Interstate and Feeney.

The Court: Anything else?

Juror: And no cause of action against Feeney.

The Court: Did you or did you not announce a verdict as to Bernice Stieringer as Administratrix of the Estate of George Stieringer?

Juror: No cause of action.

The Court: As a matter of law, in its present situation, the verdict is an incomplete one. Can you, in the opinion of the jury, arrive at a verdict in the case of Marie Magdalene Feeney, as Administratrix of Arthur Feeney against Quigley for cause or no cause? Frances Feeney Colelori, individually, against Quigley for cause or no cause? Frances Feeney Colelori, Administratrix of Richard Colelori, as to the defendant Quigley, or can you not?

Juror: I think we can, your Honor.

The Court: I wish you would retire.

Mr. Marion: Some of these verdicts are against the Estate of Helena Stieringer, a passenger—

The Court: Make those arguments out of the presence of the jury.

Juror: Is there any paper with requests to find who was suing who?

The Court: I told you one was made up and not agreed upon by counsel and the Court cannot furnish to the jury exhibits or assists not agreed upon. The only remaining task, as I see it, is to give us a verdict either for cause or no cause as to Quigley.

Juror: We appreciate it and we have done our best.

The Court: There is no criticism and I do not mean to infer any criticism except

your efforts would be of no avail with the verdict in its present condition. (Jury retired and then returned)

The Court: Have you as a jury unanimously found a verdict in the Marie Magdalene Feeney case and, if so, what is that verdict?

Juror: We find for the plaintiff Marie Magdalene Feeney, suing in behalf of Arthur Feeney, against Interstate Motor Freight System and the Estate of George and Helena Stieringer in the amount of $40,-000.

The Court: Did you find any verdict in this case for or against the defendant Quigley?

Juror: We found none against the defendant Quigley as an individual.

The Court: Did you consider that since you have been out?

Juror: Yes, your Honor.

The Court: That is the point we have in mind. Did you consider that?

Another Juror: No.

The Court: * * * may I ask you did you find a verdict unanimously in the Estate of Helena M. Stieringer case against the named defendants? That is the woman who was a passenger in the Chevrolet car.

Juror #6: We never considered it or we did not even know such a case existed. That is the reason why we were trying to obtain a listing of all the cases, but we do not have it. We were simply guessing our way out in making our decisions.

Juror #2: As far as the passenger in the Stieringer car, we do not know who was the passenger there. Nobody seems to know who was driving that car. We don't know if Helena Stieringer, was a passenger or whether George Stieringer was a passenger.

The Court: Is it or is it not a fact when you first came in you announced something with relation to the Estates of George and Helena Stieringer?

Juror #7: That is right.

The Court: What did you say?

Juror: We find for the plaintiff Marie Magdalene Feeney suing in behalf of Arthur Feeney against Interstate Motor Freight—

The Court: I mean just that portion about the Stieringers. What did you say?

Juror: No cause of action in the suit of Bernice Stieringer against Interstate and Feeney.

The Court: Bernice Stieringer as Administratrix of who?

Juror: Stieringer Estate, I think.

The Court: She was the Administratrix of her father George and also her mother Helena's Estate.

Juror: No, we just mentioned one and that meant them all.

The Court: Did or did not the jury unanimously consider Helena M. Stieringer as a passenger or did they have some other consideration?

Juror: They did not, your Honor. We could not determine who was driving so we thought we didn't know and that is why we placed George and Helena in that position and the lawyers haven't brought out which was driving and I don't think can tell.

The Court: Is that unanimous on the part of the jury?

Juror #11: I was satisfied from the testimony brought out in the court room that George Stieringer was driving the car.

The Court: * * *

Juror: We already decided about Carlus Quigley.

The Court: What did you decide?

Juror: The jury unanimously decided the situation against Quigley, as an individual, no cause of action.

The Court: That is determined to be an inconsistent verdict because Carlus Leo Quigley was the driver and operator of the Interstate Motor Freight System equipment. If negligence is found it cannot be found against the absentee owner alone and would be what is termed an inconsistent verdict. You either find Carlus Leo Quigley was negligent, and if so, his owner and employer also negligent or find they are not negligent. It has to be both one way or both the other way. If you unanimously find that you can't determine from the evidence the passenger situation, you ought to inform us as to that, if cause or no cause, and if you find that George Stieringer was the driver, then Helena Stieringer is entitled to recover in accordance with her complaint by her daughter in this case.