**HOWARD D. JURY, INC.,**
Plaintiff-Appellant,

v.

**R & G SLOANE MANUFACTURING COMPANY, INC.,**
Defendant-Appellee.

No. 79–2113.

United States Court of Appeals,
Tenth Circuit.

Argued July 13, 1981.

Decided Dec. 18, 1981.

Richard Lee Polk, Denver, Colo. (Dean R. Vanatta, Denver, Colo., on the brief), of Vanatta & Spelts, P. C., Denver, Colo., for plaintiff-appellant.

R. Eric Peterson (Patricia M. Pisarowicz, Denver, Colo., with him on the brief), of White & Steele, P. C., Denver, Colo., for defendant-appellee.

Before SETH, Chief Judge, McWIL-LIAMS, Circuit Judge, and BROWN,* Senior District Judge.

WESLEY E. BROWN, Senior District Judge.

This is an appeal by Howard D. Jury, Inc., plaintiff-appellant from an adverse judgment against it as the result of a civil jury trial.

Plaintiff entered into a subcontract in which it agreed to construct an automatic irrigation system at the Cienegita Golf Course on the Mescalero Apache Indian Reservation in New Mexico. In installing the irrigation system, plaintiff purchased and used certain products designed and/or sold by defendant-appellee under the trade name "Color Guard System." Thereafter, numerous underground leaks and ruptures occurred in the irrigation system, and plaintiff instituted suit against defendant. The case was tried on two theories: 1) negligence in the design, testing, inspection, manufacture, and sale of the "Color Guard System" (and contributory negligence of plaintiff in improperly installing the system contrary to defendant's instructions); and 2) breach of implied warranty of merchantability. The district court submitted the matter to the jury under the court's instructions, providing them with general verdict forms on the warranty issue, and a special verdict form on the negligence issue, which contained seven questions. There are no objections to the court's instructions.

During the first day of its deliberations, and again on the second and final day, the jury transmitted written questions to the trial court. After the second set of questions had been answered in open court with counsel present, the jury returned the special verdict on negligence. In answering the questions contained in the special verdict, the jury found that both plaintiff and defendant were negligent, and that the negligence of both had proximately caused plaintiff's claimed damages. The percentage of negligence, asked for in Question 5, was attributed 32.5% to defendant, and 67.5% to plaintiff. The jury found that the total amount of damages sustained by the plaintiff and proximately caused by the defendant's negligence was $56,420.00, and

---

* Honorable Wesley E. Brown, Senior District Judge, of the United States District Court for the District of Kansas, sitting by designation.

that total was broken down into three categories in Question 7. After the special verdict had been read, it was discovered that the jury had not returned a verdict on the issue of warranty, and the trial court returned the jury for further deliberations, stating that he assumed it was only going to "take a minute" and that the court and counsel would wait for them. The jury returned a verdict for defendant on the warranty issue shortly thereafter.

The district court entered judgment for the defendant on both theories, since under Colorado law, negligence on the part of a plaintiff which is greater than that of a defendant bars any recovery. After the entry of judgment, plaintiff moved for a judgment notwithstanding the verdict or in the alternative, for a new trial. The district court denied the motions, and plaintiff now appeals from those denials, raising two issues. They are: 1) Whether the trial court erred in refusing to order a new trial on the grounds that the jury was confused and did not understand the court's instructions as a whole; and 2) whether it was error for the trial court to refuse to reread the comparative negligence instruction or the instructions in their entirety to the jury.

██ Plaintiff attempts to illustrate confusion of the jury in several ways, beginning with the questions they asked concerning the negligence special verdict form. Questions 5, 6, and 7 on that form, which were the center of the jury's difficulties, and thus are the center of the controversy between the parties on appeal, read:

QUESTION NO. 5: ... Taking the combined negligence that proximately caused the damages as 100 percent, what percentage of that negligence was attributable to the defendant and what percentage was attributable to the plaintiff?

QUESTION NO. 6: If you have answered Questions 1. and 2. "yes", state without regard to the contributory negligence, if any, of the plaintiff the amount of damages, if any, sustained by the plaintiff and proximately caused by the defendant's negligence?[1]

QUESTION NO. 7: If you state an amount of damages in response to Question No. 6., then please state the amount of damages attributable to the following categories, if any damages are so attributable:

(1) Repairs and replacements

(2) Back charges

(3) Lost profits.

On the first day of its deliberations, the jury asked three questions regarding the verdict forms, the second of which was: "Do the percentages referred to in Question No. 5 relate to the total figure in No. 6 or each item in No. 7?" The court then reread the last three questions on the special verdict form and gave a brief explanation, to which there was no objection. Because of the lack of an objection, we need not consider the first set of questions any further. On the second day of its deliberations, the jury again sent written questions to the trial court, and it is these questions which the plaintiff contends clearly demonstrate confusion:

Does question # 6 want the total amount to be awarded to the plaintiff by the defendant or the total amount of damage done from which the amount to be awarded the plaintiff by the defendant would later be figured from the percentages given in question # 5?

Does question # 7 ask for the total amount of damage done or the total amount of money Sloane would owe for the damage?

In answering the questions, we realize that we decide the amount for question # 6. However, when we figure the percentages on question # 5, is it supposed to equal 100% of answer # 6 (if it differs

---

1. The last word in Question No. 6 originally was "occurrence", but after the second set of questions from the jury, the words "defendant's negligence" were substituted for "occurrence" by mutual agreement of counsel for the parties.

from the $175,000 asked for) or the percentage of $175,000 regardless of any change we decided on?

The trial court again went over the questions in the negligence special verdict form, carefully explaining each one to the jury, and then asked the jurors if they understood. One juror asked if they might discuss the matter further, and the court allowed further questions from the jurors and supplied further answers, all without objection from counsel, until the jurors indicated they had no further questions. At that point, defendant's attorney believed the jury was still confused, and the attorneys for both sides agreed to try to clarify the special verdict form. The change referred to in Footnote 1 was agreed to and made. When asked whether the change had answered their question, the jurors indicated that it had. The foreman, who had earlier stated in response to a question from the court that he did not know whether it was necessary or would be helpful for the court to read all the instructions again, at this point unequivocally answered "No" when the trial court repeated the question. Two jurors then stated that they thought they had already reached an agreement or understanding, and the foreman said "We want to make sure we are doing it right before we bring it in." The jury again retired to the jury room without an objection from either counsel, though plaintiff's attorney had requested that all of the instructions be repeated, which point will later be discussed. No further communications from the jury were received before the special verdict was returned.

In addition to the failure of plaintiff's counsel to object to the court's explanations and answers, and to the continued deliberations of the jury, there exists another sound reason for rejecting plaintiff's view of the jury's questions. Plaintiff contends that the questions themselves show confusion concerning the law of comparative negligence and the jury's duties thereunder, and indeed, as the district court recognized, the jury probably was confused at least to the point of requiring further explanation. But the question before us is whether the confusion in the jurors' minds was eliminated before the verdicts were returned, not whether the jurors were confused prior to that time. As the district court stated in denying plaintiff's motions for judgment notwithstanding the verdict or for a new trial:

"... I continued asking questions until I was satisfied that the confusion had been abated. I asked the jury if their question was answered and each nodded affirmatively. I then asked if the jury wanted me to read the entire instructions all over again and the foreman answered in the negative."

The trial judge, who was present in the courtroom and was able to observe the jury, was satisfied that any confusion which had existed was removed before the jury returned their verdicts, and we find nothing in the record or the verdicts which causes us to question that conclusion.

Plaintiff's second contention is that the jury's confusion and misunderstanding of the instructions are evidenced by the answers to Questions 5, 6, and 7 on the special verdict form. Specifically, plaintiff claims that the jury confused percentage of negligence with percentage of damages, deciding first the damages to which they thought plaintiff was entitled, then figuring what percentage of the total claimed damages that amount was, and by "working backwards," assigning that percentage as the percentage of negligence attributable to defendant. Plaintiff bases all of this on its mistaken assertion that $56,420.00 (which the jury found as the amount of damages sustained by plaintiff) is 32.5% (the percentage of negligence the jury assigned to defendant) of $175,000.00 (the total amount of damages prayed for by plaintiff). In fact, $56,420.00 is 32.24% of $175,000.00. Plaintiff's argument is constructed out of speculation, and a verdict will not be upset on the basis of speculation.

6A *Moore's Federal Practice*, ¶ 59.08[4], pp. 59–129 to 59–130. Furthermore, plaintiff's theory ignores both the court's instructions and its repeated explanations in answer to the jury's questions that the jury was not to concern itself with any computations or calculations. Collaterally, plaintiff asserts that none of the breakdown amounts entered in answer to Question 7 was supported by the evidence, but we find nothing to confirm plaintiff's statement in the record submitted on appeal. In short, plaintiff questions matters which inhere in the verdict itself. Ordinarily, even direct testimony from jurors is incompetent to prove such matters, 6A *Moore's Federal Practice*, ¶ 59.08[4], p. 59–148; a fortiori, this Court will not invalidate a jury verdict on the basis of plaintiff's guesswork as to the manner in which the jurors arrived at that verdict.

The last attempt plaintiff makes to show the jury's confusion rests on the fact that the jury initially failed to render a verdict on the warranty issue. That fact does not conclusively show confusion or misunderstanding of the court's instructions; it might just as well show that the jury simply forgot, after deliberating, to fill out the appropriate verdict form or to bring it with them when they were returned into court. Again, we would indulge in speculation if we followed plaintiff's view. The jury, which had demonstrated caution and a willingness to ask questions about anything they did not understand, did not seek further guidance concerning the warranty issue. These circumstances do not show confusion. Plaintiff indirectly challenges the trial court's statement, made in sending the jury back to deliberate on the warranty issue, that he assumed it was only going to "take a minute." Contrary to plaintiff's contention, we do not see this comment by the court as "so obviously tainting, unfair, and prejudicial to plaintiff as to require the granting of a new trial." Indeed, when the district court returned the verdict forms to the jury after the second set of questions, he asked if they were getting close to a verdict, and the reply was "Yes, I think we

are." The trial court apparently believed that the jury had determined the warranty issue, but had forgotten to return with the completed verdict form. As we have said, this view is consistent with the facts shown by this record and plaintiff has not shown it to be wrong.

■ None of plaintiff's examples convinces us that confusion or misunderstanding of the court's instructions infected the jury's verdicts. This was not a case where the jury's error or lack of understanding of their duty was patent from the verdicts themselves, as in *Cheney v. Moler*, 285 F.2d 116 (10 Cir. 1960), nor where verdicts were inconsistent on their faces, indicating either confusion or abuse of power by the jury, as in *Hopkins v. Coen*, 431 F.2d 1055 (6 Cir. 1970). Also, here there was no plain confusion evidenced at the time the jury attempted to state their verdicts, as there was in *Feeney v. Stieringer*, 162 F.Supp. 540 (W.D. N.Y.1957). In the cases just cited, a new trial was required because confusion was evident and observed, not a mere possibility. In the present case, plaintiff would have us presume or surmise confusion in the minds of the jury at the time the verdicts were rendered, without any objective evidence thereof. A motion for new trial is addressed to the sound judicial discretion of the trial court, which is not to be disturbed on appeal except when that discretion has clearly been abused. *Atchison, Topeka and Santa Fe Railway Co. v. Jackson*, 235 F.2d 390 (10 Cir. 1956). Under these circumstances, where plaintiff offered nothing in support of its motion except speculation, the trial court did not abuse his discretion in denying the motion for a new trial.

■ The second issue raised by plaintiff's appeal is whether it was error for the trial court to refuse to reread the comparative negligence instruction or the instructions in their entirety to the jury, as plaintiff requested after the second set of questions had been asked and answered, and before the jury retired to deliberate for the last time.

When a jury returns to the courtroom with the request for further instruction,

the presumption must be that the only uncertainty in the jury's mind is with respect to the matter about which further instruction is sought and the court is required only to fairly answer the question asked by the jury.

*Fitzpatrick v. Sooner Oil Co.*, 212 F.2d 548 (10 Cir. 1954), at 551. In the case before us, the only questions asked by the jury related specifically to the verdict forms, not the instructions. The Court answered those questions to the satisfaction of the jury, as the jurors indicated to the Court. When the Court asked if the jury wanted him to reread all the instructions, the foreman responded in the negative. The trial court had earlier instructed the jury on the effect of its finding as to the degree of negligence of each party, as mandated by C.R.S. § 13–21–111(4), and the jury showed no difficulty in understanding the comparative negligence instruction itself. We hold that the district court clearly did all that was required, and that it was not error to refuse to repeat either the comparative negligence instruction or all of the instructions to the jury.

AFFIRMED.