937 F.2d 617
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Melinda C. SHAW, Plaintiff-Appellee/Cross-Appellant,
v.
MAST ADVERTISING & PUBLISHING, INC.,
Defendant-Appellant/Cross-Appellee.
 Nos. 90-3085, 90-3100.
 United States Court of Appeals, Tenth Circuit.
 July 12, 1991.
 
 1
 Before EBEL, Circuit Judge, MCWILLIAMS, Circuit Judge, and ALLEY, Distirct Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 ALLEY, District Judge.
 
 
 4
 Melinda C. Shaw filed this lawsuit against her former employer Mast Advertising & Publishing, Inc. ("Mast") alleging age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq. ("ADEA"). Count One alleged that Mast had demoted Shaw from a management position to a non-management one because of her age, and Count Two alleged that she was discharged in retaliation for having filed a complaint of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). The jury found for Mast on the discrimination claim, but for Shaw on the retaliation claim, and awarded her $62,000 in back pay. The trial court denied Mast's motion for judgment notwithstanding the verdict, or in the alternative, new trial, on the retaliation claim.
 
 
 5
 Although Shaw requested the remedy of front pay rather than reinstatement, the trial court ordered Mast to reinstate her. The trial court also reduced the attorney's fees requested by Shaw due to her loss on the discrimination claim.
 
 
 6
 Mast appeals the denial of the motion for judgment notwithstanding the verdict, or in the alternative, new trial, while Shaw appeals the order of reinstatement and the reduction of attorney's fees.
 
 
 7
 * Mast argues that the evidence submitted to the jury by Shaw was insufficient to support a verdict on the retaliation claim. In reviewing a district court's denial of a motion for a judgment n.o.v., we may find error only when the evidence points but one way and is susceptible to no reasonable inferences sustaining the position of the party against whom the motion is made. Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir.1988). The court cannot weigh the evidence, consider the credibility of E.E.O.C. v. Prudential Savings and Loan Association, 763 F.2d 1166, 1171 (10th Cir.1985), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). On appeal, we employ the same standard of review as does the trial court. Brown v. McGraw-Edison Co., 736 F.2d 609, 613 (10th Cir.1984). Upon review of the record under the above standards, we conclude that a judgment n.o.v. is not warranted.
 
 
 8
 Mast is a corporation that sells advertising in telephone directories and also publishes the directories. The directories that are compiled and published for telephone companies are called "utility" directories, and ones that are compiled and published for any other client are called "non-utility", "suburban", or "special" directories. Shaw began working for Mast in 1979, and in time became a manager in the non-utility side of Mast. In July, 1985, she was asked to assume temporary management responsibilities in the utility side as well, due to a vacancy. Another employee, Pat Thomas, who had filed a race discrimination lawsuit against Mast, was in line for promotion to the position offered to Shaw. When Shaw asked Barbara Simon, Director of Human Resources, why Thomas was not being promoted, Simon responded that Thomas "would sit there till she rotted." III R. 77.
 
 
 9
 In August 1985, the temporary position in the utility side was offered to Shaw on a permanent basis, and she accepted it. In December, 1985, Shaw was removed from that position, told to take vacation, and that attempts would be made to find another position for her. Shortly thereafter, Simon sent Shaw a letter stating:
 
 
 10
 We would expect you to report to work on January 13, 1986. If you do not do so, you will be considered to have abandoned this opportunity, and your separation from Mast will occur on that date.
 
 
 11
 Shaw reported to work on the assigned date, and testified that the President of Mast, Ronald Kennedy, was shocked to see that she had indeed returned to work. The job given to her was as a non-management account executive in another division of Mast, National Yellow Page Sales (NYPS).
 
 
 12
 On May 16, 1986, Shaw filed her age discrimination charge with the EEOC and the Kansas Commission on Civil Rights. She testified that several people at Mast, including the switchboard operator, secretaries, and a janitor, as well as others, indicated to her that they knew about the EEOC charge, even though she herself had not told anyone.
 
 
 13
 Prior to filing the EEOC charge, Shaw had asked Pat Black, a former supervisor, to write a recommendation letter for her. This he did, in glowing terms. However, after Mast received Shaw's EEOC charge, Simon asked Black to write a memo about Shaw that could be used in Mast's response to the EEOC. The memo written by Black could only be described as critical of Shaw, and opposite the recommendation letter he had previously written. Simon knew about the favorable recommendation letter written by Black, but did not forward it to the EEOC along with the critical memo, even though Black testified that he had given Simon a copy of it.
 
 
 14
 On June 13, 1986, Shaw discovered that she had been using the wrong trademark for the advertising copy on a major account, and suspected that she had been set up and intentionally given erroneous information. She spoke with Sheree Etzenhouser, the person assigned to work with her on the account, to find out whether Etzenhouser had been using the wrong trademark too. Shaw told Etzenhouser that she believed that both their jobs might be in jeopardy due to the size of the account and the magnitude of the mistake. Shaw confided in Etzenhouser about the EEOC charge, but said she did not want Etzenhouser to become involved in the matter. Shaw admitted that Etzenhouser seemed upset, but testified that she was trying to take responsibility for the mistake herself rather that have Etzenhouser caught in the middle.
 
 
 15
 Later that same day, Shaw was called into a meeting with Simon, Etzenhouser, and three other supervisors to discuss the meeting that Shaw and Etzenhouser had earlier. Etzenhouser recounted her version of the conversation, without comment from Shaw, but by the time Shaw was given an opportunity to recount her version, Etzenhouser had been excused from the room by Simon. Shaw testified that she did not contradict or interrupt Etzenhouser's account of the conversation because she did not want to start an argument, and she believed she would have an opportunity later to recount her own version of the conversation. Shaw testified that she felt put on the spot in the meeting, and that Simon's tone was loud, angry, harsh and scolding. Simon instructed Shaw not to discuss the EEOC charge again at Mast, and to treat Etzenhouser in the future as any other employee. Finally, Simon told Shaw that any further aggravation of other employees could result in Shaw's termination.
 
 
 16
 June 13 fell on a Friday. On Monday, Etzenhouser was at work, as was Shaw, but Etzenhouser did not come in on the following Tuesday or Wednesday. On Thursday, June 19, 1986, Etzenhouser came to work and resigned. In a memo regarding the resignation, Simon stated that the reason Etzenhouser resigned was the June 13 meeting with Shaw. However, Etzenhouser had made statements in the June 13 meeting with Simon, Shaw and the others that she had been looking for a job even prior to these events. Etzenhouser herself testified that prior to the June 13 meeting, she had been interviewed by a prospective employer and had filled out a job application on May 28, 1986 indicating that she could begin work within two weeks. Etzenhouser also testified that before the June 13 meeting, she had decided she did not like the hours she was required to work at Mast, and wanted to be able to spend more time at home with her new husband.
 
 
 17
 On June 25, 1986, Shaw was discharged for the stated reason that she had caused an employee to resign. Simon testified that Shaw was the only supervisor ever to be discharged at Mast because a subordinate employee had resigned. Simon also testified that although she did not remember Etzenhouser's statements of June 13 that she [Etzenhouser] was looking for a job, "it basically didn't make any difference." VI R. 908.
 
 
 18
 By its very nature, a motion for judgment n.o.v. does not consider the evidence in favor of the moving party, but only whether there was any evidence submitted to the jury from which it could have found for the prevailing party. Therefore, we need not consider the evidence that Mast introduced to controvert Shaw's retaliation claim, and that Mast insists requires reversal.
 
 
 19
 Mast argues that there was no evidence at all of retaliation, because Shaw was fired for her behavior toward Etzenhouser on June 13 and on June 16, the one other day that both women were at Mast before Etzenhouser resigned on June 19. This argument ignores though the testimony that Mast had declined to promote Pat Thomas after she filed a race discrimination lawsuit.[1] This testimony, which the jury apparently found persuasive, constituted evidence of Mast's attitude toward those who file EEOC charges. The argument also ignores the favorable recommendation letter written by Pat Black, a former supervisor of Shaw's, and the subsequent critical letter written by Black for submission to the EEOC. Mast also ignores the fact that Simon omitted the favorable letter in response to the EEOC charge, even though Black testified that he had given Simon a copy of the letter.
 
 
 20
 Etzenhouser's testimony that she had been looking for a job prior to June 13 casts in doubt her credibility as a witness when she testified that her reason for leaving Mast was her treatment by Shaw. She admitted that the long hours and her new husband were reasons she had already decided to look for another job, long before the June 13 incident. The jury was entitled to disbelieve Etzenhouser due to her conflicting testimony, and Mast cannot be heard to argue otherwise.
 
 
 21
 The jury was further entitled to draw an inference of pretext and retaliation by Mast's admission that Shaw was the only supervisor ever discharged because a subordinate resigned. The jury was also entitled to evaluate the credibility of Mast's witnesses in determining whether Mast used the Etzenhouser resignation as an excuse to discharge Shaw. Mast argues that there was no evidence that its articulated reason for discharging Shaw was a sham, but the record is full of evidence from which that conclusion could reasonably be drawn.
 
 
 22
 Mast also argues that Shaw's testimony is not credible as a matter of law and "should be discarded." Mast's Reply Brief, p. 7. However, evaluating the credibility of witnesses is precisely what the court may not do in deciding a motion for judgment n.o.v. Regardless of what Simon or other Mast employees thought of Shaw, the jury heard all witnesses's testimony, evaluated their demeanor and credibility, and decide to believe Shaw. The record of this trial is absolutely replete with evidence that the jury properly considered and from which the jury could have reasonably concluded that Mast discharged Shaw in retaliation for her EEOC charge. Mast would have us weigh the evidence, conflicting as it was, and would have us evaluate the credibility of witnesses from a cold record. The Court's role is limited in a motion for judgment n.o.v. to determining whether any competent evidence was before the jury from which it could have reached the decision that it did. We have determined that there was more than ample evidence, and that the trial court's denial of the motion for judgment n.o.v. was proper.
 
 II
 
 23
 In its second issue on appeal, Mast argues that the trial court should have granted its motion for new trial. A motion for new trial made on the ground that the verdict of the jury is against the weight of the evidence normally presents a question of fact and not of law and is addressed to the discretion of the trial court. Richardson v. City of Albuquerque, 857 F.2d 727, 730 (10th Cir.1988). The trial court's decision will not be disturbed absent a showing of abuse of discretion. Id. at 730. Our inquiry focuses on whether the verdict is "clearly, decidedly, or overwhelmingly" against the weight of the evidence. Id. at 730.
 
 
 24
 Here, Mast argues that the verdict and the award of damages were against the weight of the evidence. Mast even agrees that its argument with respect to the motion for judgment n.o.v. applies equally to the motion for new trial. Because we have reviewed the record and found it more than sufficient to support the denial of a motion for judgment n.o.v., we need not repeat the task again with respect to the sufficiency of the evidence to support the denial of a motion for new trial. Mast correctly argues that an employee's disruption of the workplace will support dismissal, but the jury found Shaw's evidence described above as more persuasive, and did not believe that Shaw was indeed discharged for misbehavior.
 
 
 25
 Next Mast argues that the damage award of $62,000.00 was against the weight of the evidence because the amount must have included bonus and fringe benefit. Shaw's expert testified that the damages were $68,886.63, and Mast's expert testified that the damages were $54,646.00. Significantly, Shaw's expert based his damage calculation on figures provided by Mast, but Mast argues that a damage award so calculated is against the weight of the evidence.
 
 
 26
 However, Mast did not object at trial to the figures used by Shaw's expert, but instead now argues that it "did not provide specific, detailed fringe benefit information because it was not requested to do so by the interrogatories and, therefore, had no obligation to do so." Mast's Opening Brief, p. 34. Shaw's damage calculation was submitted to the jury, without objection, and based on figures supplied by Mast. The ultimate figure chosen by the jury was squarely between the two figures offered by Mast and Shaw, and we cannot say that the jury's decision was against the weight of the evidence.
 
 
 27
 We have said before that a verdict will not be set aside on the basis of speculation as to the manner in which the jurors arrived at it. Mid-West Underground Storage, Inc. v. Porter, 717 F.2d 493, 501 (10th Cir.1983); Howard D. Jury, Inc. v. R & G Sloane Manufacturing Co., 666 F.2d 1348, 1352 (10th Cir.1981). The $62,000.00 damage award was well within the range of the evidence submitted to the jury, and Mast's argument to the contrary is without merit. Mast has again made a one-sided argument without looking at the record as a whole, and we find no abuse of discretion in the trial court's denial of the motion for new trial.
 
 III
 
 28
 After the jury returned its verdict, the trial court allowed the parties to brief the issue of equitable relief. Shaw had requested reinstatement in her Complaint, but changed her request in the post-trial briefing to seek front pay. Mast requested reinstatement. Shaw's position, in the post-trial briefing and now on appeal, is that Mast has demonstrated such hostility toward her that no possible amicable working relationship could be established were she reinstated. On the other hand, Mast argues that there will be no employees in the chain of command above Shaw who were involved in her termination. The one exception is Ronald Kennedy, President of Mast, who is by definition in every Mast employee's chain of command.
 
 
 29
 It is now settled law in the Tenth Circuit that under certain circumstances front pay is an appropriate remedy in lieu of reinstatement. Anderson v. Phillips Petroleum Co., 861 F.2d 631, 637 (10th Cir.1988). However, reinstatement is the preferred remedy, unless the employer has demonstrated such hostility that there is little or no hope that a working relationship would be possible. Spulak v. K Mart Corp., 894 F.2d 1150, 1157 (10th Cir.1990).
 
 
 30
 Shaw argues that she would be subject to hostility in the workplace if she is reinstated because many of the witness/employees from Mast who testified against her are still employed there. In support of her argument in favor of front pay, she relies on Spulak's award of front pay. There, the plaintiff was a supervisor of an automobile repair shop and would have been required to return to a managerial position over employees in front of whom he had been humiliated and embarrassed. Shaw would not return to supervise employees who had testified against her, and would probably not return to a management position at all, as the position from which she was discharge was non-management.
 
 
 31
 Reinstatement by its very nature is always awkward to a greater or lesser extent after the parties have spent months or years opposing each other in litigation. Nevertheless, reinstatement is the preferred remedy, and Shaw will not be supervised by anyone who was involved in the termination of her job. Even though Kennedy was President of Mast at the time of Shaw's termination, and approved the termination, he will have no day-to-day contact with her. Thus, although Shaw may work in the same building or office with those who testified against her, she will not be supervised by any of them, and none will be in her chain of command. This situation is distinguishable from the facts of Spulak, and we do not believe that there will be such an atmosphere of hostility at Mast that a new working relationship cannot be forged. We therefore find support in the record for the trial court's decision to order reinstatement, especially as plaintiff once sought it, and find no grounds for disturbing the decision made below.
 
 IV
 
 32
 The trial court awarded Shaw $49,181.00 in attorney's fees. The trial court reached this figure after eliminating (1) the deposition costs of two witnesses whose testimony related only to the age discrimination claim; and (2) one-third of the amount for both fees and expenses claimed by Shaw. Shaw argues on appeal that the trial court abused its discretion in making the reduction, and Mast argues that the trial court was within the limits of discretion when it made the reduction.
 
 
 33
 As the parties recognize, the trial court has discretion in determining a fee award. Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). The easy case is one where the plaintiff prevailed on all claims, but where a plaintiff enjoyed only limited success as Shaw did here, the calculation is more difficult. If the claims are unrelated, the trial court should treat the losing claims as separate lawsuits and award no fees for that part of the litigation. Ramos v. Lamm, 713 F.2d 546, 556 (10th Cir.1983). If the claims are related though and arise from a common core of facts, the inquiry is more difficult, and must focus on the degree of success obtained. Id.
 
 
 34
 Shaw argues that the claims are so interrelated that the fee reduction should have been no more than ten percent. Shaw requested damages in the amount of $68,883.63, and received a verdict in the amount of $62,000.00. Therefore, Shaw argues, she received virtually all the relief she requested, and should likewise receive virtually all fees for virtually all hours spent.
 
 
 35
 Mast argues that the two claims were not as closely related as Shaw would believe, because the demotion and the discharge covered two periods of time and two sets of supervisory personnel. In short, Mast argues that Shaw is lucky the fee reduction was no more than it was.
 
 
 36
 We reject Shaw's argument that she received almost all the damages she sought because she received a verdict only $6,000.00 less than she sought. We have made it clear that attorney's fees are not to be awarded based on the amount of monetary recovery, but on the policy being vindicated. Ramos, 713 F.2d at 557. Therefore, the proper inquiry is what policies or claims were vindicated in the trial below.
 
 
 37
 Although it cannot be said that Shaw's two claims were entirely unrelated, each did involve a distinct employment decision, time period, and group of supervisors. Some reduction was definitely warranted, especially when the two claims were separable as to time and witnesses. Nevertheless, there was also overlap, as some of Shaw's proof of the retaliation claim involved evidence of events that occurred prior to her EEOC charge. For example, the favorable recommendation letter was written by Pat Black before the EEOC charge was filed, and Barbara Simon's derogatory comments about Pat Thomas's EEOC charge were made before Shaw filed hers.
 
 
 38
 Shaw also argues that she obtained "excellent results" in the form of equitable relief, further questioning the reduction by the trial court. However, the equitable relief she obtained (reinstatement) is not the equitable relief she sought (front pay). She was entitled to receive one or the other after her verdict on the retaliation claim, and so obtaining the one that she expressly did not want could not be construed as "excellent results."
 
 
 39
 After reviewing the nature of the two claims, the results sought, and the results achieved, we cannot say that the trial court abused its discretion in reducing the fees and costs by one-third. A reduction was called for, and the trial court exercised its discretion accordingly. We therefore find no reason to disturb the award of attorney's fees.
 
 V
 
 40
 In summary, the trial court is AFFIRMED on the issues of denial of the motion for judgment n.o.v., denial of the motion for new trial, the order of reinstatement, and the reduction of attorney's fees.
 
 
 
 *
 Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Pat Thomas was eventually promoted into a managerial position, but the promotion came after Ms. Thomas dismissed her race discrimination lawsuit