**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 93-5009
_____

UNITED STATES OF AMERICA,

Appellee,

VERSUS

CHARLES T. WICKERSHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(August 5, 1994)

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

PER CURIAM:

Charles T. Wickersham appeals his conviction of making a false statement on his tax return. Finding no error, we affirm.

I.

Wickersham purchased a grain elevator for $100,000 in March, 1989. Two weeks later, a commissioner on the Orange County Port and Navigation District (OCPND) suggested that the OCPND should purchase the elevator. The OCPND was interested in acquiring a "bagging facility," a facility capable of bagging grain for overseas shipment by cargo vessels. The Board authorized Commissioner Frederick to begin negotiations with Wickersham to purchase the elevator. A OCPND attorney wrote an opinion letter

indicating that the OCPND had the authority to acquire such a facility through purchase, lease or condemnation and reviewed this authority with the Board.

At the end of July, Wickersham contacted his accountant and told him that an Orange County agency was interested in acquiring the grain elevator. Wickersham advised his accountant that he was interested in purchasing some other property in the county. The accountant suggested that both transactions could be accomplished in a "like-kind exchange" which would defer the recognition of taxes on the gain realized. Wickersham attempted to negotiate a "like-kind exchange" involving the grain elevator and a shopping center owned by a third party, but the third party ultimately refused to agree to it.

On July 31, the OCPND voted to purchase Wickersham's elevator for $450,000. Shortly after the OCPND agreed to purchase the grain elevator, Wickersham's attorney informed the OCPND attorney that Wickersham needed a letter of condemnation. Although the OCPND did not use condemnation, Commissioner Frederick told the OCPND attorney that he had threatened to use condemnation during negotiations. The OCPND's attorney faxed Wickersham's tax attorney a letter stating that Frederick had used the threat of condemnation during negotiations even though the attorney only remembered condemnation being discussed during a Board meeting as an option, not that Frederick had actually used the threat of condemnation in order to make the purchase.

Wickersham's 1989 tax return indicated that he had sold the grain elevator under threat of condemnation for $450,000. The IRS

contends that there was no threat of condemnation, and that Wickersham owes $98,000 in taxes on the capital gain of $350,000 he made as a result of the sale.

Wickersham, Commissioner Frederick and Commissioner Winfree were charged with conspiracy to defraud the OCPND by selling a grain elevator to them at an inflated price. Wickersham was also charged with making a false statement on his tax return, namely that the grain elevator was sold under threat of condemnation. The jury convicted Wickersham on the tax fraud count and acquitted him on all other charges. Wickersham raises a number of issues on appeal which we discuss below.

## II.

Wickersham first argues that the evidence was insufficient to support his conviction. In reviewing the sufficiency of the evidence, this court determines whether, viewing the evidence in favor of the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. **U.S. v. Sparks**, 2 F.3d 574, 579 (5th Cir. 1993), **cert. denied**, 114 S.Ct. 720 (1994).

The jury convicted Wickersham of filing a false tax return in violation of 26 U.S.C. § 7206(1). To convict, the government must show that the defendant willfully made a false statement on his return. **U.S. v. Robinson**, 974 F.2d 575, 579 (5th Cir. 1992).

Under 26 U.S.C. § 1033, the gain realized on the sale of property under the threat of condemnation is not recognized under the Internal Revenue Code, provided replacement property is

3

purchased within the statutory period.[1]  Wickersham argues that he did sell the property under a threat of condemnation and was entitled to the tax deferment.

The evidence established that Commissioner Frederick was notified of his right to threaten condemnation and told the OCPND attorney that he had threatened condemnation.  But the jury was entitled to conclude that there was no genuine threat, but, instead, a subterfuge to support preferred tax treatment for Wickersham.  The jury was entitled to infer from the evidence that Wickersham, Frederick and Winfree were acting together to defraud the OCPND by selling the elevator at an exorbitantly inflated price.  Wickersham bought the elevator for only $100,000 in March and sold it for $450,000 in July.  Wickersham and Winfree were business partners in a business venture, in which Wickersham had provided a $75,000 letter of credit on Winfree's behalf, and Winfree had once owned the elevator and had sold it for only $85,000.  The government produced evidence that Winfree, while technically recusing himself from the purchase of the grain elevator, used his influence to persuade the commissioners to buy it from Wickersham, for the inflated price.  Moreover, Wickersham did not ask for the letter of condemnation until after he was unable to do a like-kind exchange and after the Board had already voted to purchase the elevator.

The evidence was sufficient to support the conviction.  It was not unreasonable for the jury to determine that Wickersham knew

---

[1]  The purchase of replacement property within the statutory period was uncontested.

that condemnation had never been threatened and that he knew his statement to the contrary was false.

III.

Wickersham next argues that the court erred in barring admission of evidence of prosecutorial misconduct. Wickersham contends that he should have been allowed to elicit the testimony of Wayne Peveto and Joseph Alford, Winfree's defense attorneys, regarding a meeting they had with U.S. Attorney Smith. Wickersham alleges that at this meeting, Smith told Peveto and Alford that unless Frederick changed his grand jury testimony and testified that he did not mention the authority to condemn to Wickersham, that he would be indicted.

Wickersham argues that the exclusion of evidence violates his due process and the compulsory process clause. He relies on **U.S. v. Heller**, 830 F.2d 150 (11th Cir. 1987), in which the court reversed a conviction because the defendant was not allowed to present evidence that the prosecutor had intimidated a defense witness into providing testimony against the defendant.

In the case at bar, however, the court held an evidentiary hearing and determined, as a matter of law, that there was no prosecutorial misconduct. The court found that the prosecutors had merely suggested that if Frederick had lied to the grand jury, he should tell the truth. The court refused to allow Wickersham to elicit the testimony because it was not proper to allow a co-defendant's attorney to testify and because the evidence was not relevant.

Wickersham does not present any evidence that Frederick

5

actually was intimidated into changing his grand jury testimony. Nor is there evidence that other witnesses were intimidated. The district court did not abuse its discretion in refusing to admit this evidence.

IV.

Wickersham next argues that the district court erred in giving a modified "Allen" charge to the jury. We review the modified "Allen" charge for abuse of discretion. **U.S. v. Lindell**, 881 F.2d 1313 (5th Cir. 1989), **cert. denied**, 496 U.S. 926 (1990).

The modified "Allen" charge given by the district court comports with the modified "Allen" charge approved in **Lindell**. The court did not abuse its discretion.

V.

Wickersham argues next that the court should have ordered a new trial because the jurors were improperly affected by the "Allen" charge. After the verdict was rendered, Wickersham's attorney received an unsolicited phone call from a juror who said that she hoped they appealed the case because the defendant was not guilty and that she and several other jurors changed their verdict after receiving the "Allen" charge.

Federal Rule of Evidence 606(b) prohibits the use of juror's statements to impeach the verdict. Rule 606(b) has consistently been used to bar testimony when the jury misunderstood instructions. **Farmers Coop. Elev. Ass'n v. Strand**, 382 F.2d 224, 230 (8th Cir.)(testimony to misinterpretation of instructions inadmissible), **cert. denied**, 389 U.S. 1014 (1967); **U.S. v. Chareton**, 309 F.2d 197, 200-01 (6th Cir. 1961)(disallowing

6

testimony to mistakes made by jury in interpreting charge), **cert. denied**, 372 U.S. 936 (1963).  Therefore, the court did not err in refusing to allow jury testimony to impeach the verdict.

VI.

Finally, Wickersham argues that the indictment was defective because it did not state the year of the return.  **U.S. v. Boulet**, 577 F.2d 1165, 1167-68 (5th Cir. 1978)(because tax system is on an annual basis, indictment for failure to file tax return must charge an offense for a specific year), **cert. denied**, 439 U.S. 1114 (1979).  However, the indictment here was for making a false statement on a return, rather than failing to file a return.  The indictment did cite the date the false return was filed. Furthermore, Wickersham was provided a copy of the tax return.  The indictment was not defective.

In any case, objections to the indictment are generally waived if not made before trial.  **U.S. v. Campos-Asencio**, 822 F.2d 506 (5th Cir. 1987).  Wickersham did not object to the indictment before trial and has shown absolutely no prejudice based on the Government's failure to allege the date of the return in the indictment.

AFFIRMED