PUBLISH

UNITED STATES COURT OF APPEALS
**Filed 10/11/96**            TENTH CIRCUIT

SCOTT ALLEN,                                        )
                                                   )
    Plaintiff-Appellant,                           )
                                                   )
    v.                                             )            No. 95-4060
                                                   )
MINNSTAR, INC., dba Wellcraft Marine,              )
dba Genmar Industries, Inc.,                       )
                                                   )
    Defendant-Appellee,                            )
                                                   )
    and                                            )
                                                   )
OUTBOARD MARINE CORPORATION,                       )
                                                   )
    Defendant-Cross-Claimant,                      )
                                                   )
    v.                                             )
                                                   )
MITCHELL HUFFMAN and MELVIN HUFFMAN,               )
                                                   )
    Cross-Claim-Defendants.                        )


Appeal from United States District Court
for the District of Utah
(D.C. No. 86-CV-1074)


Jackson Howard (D. David Lambert and Phillip E. Lowry with him on the brief), of
Howard, Lewis & Petersen, of Provo, Utah, for the appellant.

Stephen B. Nebeker (Rick L. Rose with him on the brief), of Ray, Quinney & Nebeker, of
Salt Lake City, Utah, for the appellee.


Before BRORBY, BRISCOE, and LUCERO, Circuit Judges.

BRISCOE, Circuit Judge.

_____

Plaintiff Scott Allen appeals a jury verdict in favor of defendant Minnstar, Inc., dba Genmar Industries, Inc., dba Wellcraft Marine (Wellcraft) on plaintiff's strict product liability claims. Plaintiff also appeals the district court's denial of his motion for judgment notwithstanding the verdict or, in the alternative, for new trial. The claims arise out of a boating accident in which plaintiff was struck and severely injured by the propeller on a boat manufactured by defendant. We affirm.

The underlying facts of this case are straightforward. On August 30, 1985, plaintiff and some friends went for a midnight ride on Lake Powell in a boat manufactured by defendant. The boat, a 1978 Wellcraft Marine, Model 165 Airslot I/O, was approximately 16.5 feet in length and contained seating for passengers in the bow area. Plaintiff alleged he was sitting in the bow area of the boat when, in order to avoid an apparent obstacle in the water, the driver accelerated and made a sharp turn, causing plaintiff to fall overboard into the water. Plaintiff was struck by the boat's unguarded propeller and received severe lacerations to his left leg, resulting in the eventual amputation of the leg above the knee, and injuries to his right leg, and he was forced to undergo a colostomy due to abdominal injuries.

Plaintiff filed suit against Wellcraft and Outboard Marine Corporation (OMC), the maker of the boat's engine, asserting a variety of strict product liability claims. With respect to Wellcraft, plaintiff alleged the boat was defectively designed and unreasonably dangerous in several respects, including the following: (1) it was not equipped with a propeller guard; and (2) the bow seating arrangement allowed passengers to be easily

2

ejected during sharp turns.  Plaintiff's propeller guard allegations, as well as his claims against OMC, were dismissed on summary judgment.  See Allen v. Minnstar, 8 F.3d 1470 (10th Cir. 1993).

Plaintiff's remaining claims against Wellcraft were tried to a jury in January 1995. After eight days of trial and two days of deliberation, the jury concluded the boat was not unreasonably dangerous and returned a verdict in favor of Wellcraft.  Plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, for new trial, which was denied by the district court.

**A.  Product misuse**

Plaintiff argues the district court erred in allowing defendant to present evidence of misuse, and in instructing the jury on the defense of misuse.[1]  Although the trial transcript was not included in the record on appeal, plaintiff asserts the court allowed defendant to introduce evidence suggesting that, at the time of the accident, plaintiff was sitting on the gunwale of the boat rather than in the bow seat as alleged by plaintiff.  Plaintiff claims such evidence, even if believed by the jury, constitutes foreseeable misuse, which is not a defense to his strict liability claim.  Accordingly, plaintiff claims, such evidence should not have been introduced, and the jury should not have been instructed on the misuse defense.

It is well established that the admission or exclusion of evidence lies within the

---

[1] The record indicates that plaintiff filed written objections to the introduction of misuse evidence, Appellant's append. at 189, and to defendant's proposed misuse instruction, Appellant's append. at 330.  Due to the lack of trial transcript, we are unable to determine whether plaintiff renewed these objections during the course of the trial.

3

sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. Wheeler v. John Deere Co., 935 F.2d 1090, 1099 (10th Cir. 1991). With respect to a district court's jury instruction decisions, i.e., whether or not to give a particular instruction, we likewise review for abuse of discretion. Lyon Development Co. v. Business Men's Assur. Co. of America, 76 F.3d 1118, 1124 (10th Cir. 1996). As for the instructions themselves, we conduct a de novo review to determine whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards. Rios v. Bigler, 67 F.3d 1543, 1549 (10th Cir. 1995).

Misuse of a product by a consumer has been recognized by the Utah Supreme Court as an affirmative defense to a strict product liability claim. Ernest W. Hahn v. Armco Steel Co., 601 P.2d 152, 158 (Utah 1979). When a defendant asserts this defense and introduces evidence of misuse on the part of a plaintiff, comparative fault principles are applied and the jury is asked to consider "the relative burden each [party] should bear for the injury they have caused." Mulherin v. Ingersoll-Rand Co., 628 P.2d 1301, 1303 (Utah 1981) (comparative fault principles apply in strict liability case where there is misuse of product by consumer).

Notwithstanding the availability of this defense, however, most states that allow the defense have held it is not applicable if the particular type or manner of misuse at issue was foreseeable by the defendant. To date, the Utah courts have not decided this question. See Mulherin, 628 P.2d at 1304 n. 11 ("[T]here is no occasion on the facts of this case to determine whether some kinds of 'misuse' are so foreseeable that the manufacturer or seller is bound to anticipate and protect against them, so they are not

4

available as a defense to strict liability."). Nevertheless, the district court in the present case adopted this foreseeability test and instructed the jury it was to decide whether plaintiff's alleged misuse, if proven by defendant, was foreseeable to defendant.

Although plaintiff does not question the district court's adoption of the foreseeability test, he contends the court should have decided, as a matter of law prior to trial, that a passenger sitting on the gunwale of a boat constitutes foreseeable misuse. We disagree. Most states that recognize the misuse defense generally treat foreseeability of misuse as a jury question. See, e.g., Leon v. Caterpillar Indus., 69 F.3d 1326, 1342 (7th Cir. 1995) (under Indiana law, foreseeability of an intervening misuse is usually a question for the jury); Perlmutter v. U.S. Gypsum Co., 4 F.3d 864, 873 (10th Cir. 1993) (noting Colorado courts have held that whether a use or a manner of use is reasonably foreseeable is a jury question, and a defendant raising such an issue is entitled to an instruction on misuse); Gootee v. Colt Industries, 712 F.2d 1057, 1066 n. 9 (6th Cir. 1983) (noting under Michigan law, "it is for the jury to determine to what extent a risk [of misuse] is foreseeable and must be guarded against" by manufacturer); Moran v. Faberge, 332 A.2d 11, 16 (Md. 1975) (noting "there is a vast middle ground of product uses about which reasonable minds could disagree as to whether they are or should be foreseeable to the manufacturer, thus requiring resolution by the trier of fact."); see generally John F. Vargo, The Emperor's New Clothes: The American Law Institute Adorns a "New Cloth" for Section 402A Products Liability Design Defects--A Survey of the States Reveals a Different Weave, 26 Mem. St. U.L. Rev. 493 (1996) (noting issue of foreseeability of product misuse is usually a jury question). Although the Utah Supreme Court has not directly addressed the issue, the court recently noted, in the context of a legal malpractice

action, that "'evaluative applications of legal standards (such as the legal concept of "foreseeability") to the facts,'" are normally "'always to be decided by the jury if reasonable persons could differ about them on the evidence received at trial.'" Harline v. Barker, 912 P.2d 433, 439 (Utah 1996) (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 45, at 320 (5th ed. 1984)). Based upon Harline, we believe the Utah Supreme Court would follow the majority of other states and conclude that foreseeability of product misuse is generally a jury question.

There is an additional basis for affirming the district court's decision to admit evidence of product misuse. Had defendant been able to prove plaintiff was sitting on the gunwale rather than in the bow seat at the time of the accident, then any alleged defect in the design of the boat's bow seating could not have been the proximate cause of plaintiff's injuries. Thus, even if the jury was not instructed on the misuse defense, evidence of misuse was highly relevant to whether plaintiff could establish all of the essential elements of his strict liability claim.

Finally, we emphasize the fact that the jury responded "NO" to the first question on the verdict form, which asked whether the boat was unreasonably dangerous. This negative response to the first question ended the deliberations, and the jury never reached the issue of whether plaintiff had misused the boat by riding on the gunwale. Plaintiff attempts to surmount this problem by arguing introduction of misuse evidence and the court's instruction concerning misuse were "material to any assessment of unreasonable danger, of which the prudence of the user is an essential element." Appellant's br. at 19. In addition, plaintiff argues that "[t]he instruction was especially prejudicial because it gave an aura of court acceptance of the premise that Allen was using the boat

6

improperly." Id.

We find no merit to these arguments. First, plaintiff has failed to demonstrate how introduction of the misuse evidence, or the court's instruction concerning misuse, could have affected the jury's deliberations on the question of whether the product was unreasonably dangerous. Although he asserts these factors were "material" because they concerned the "prudence of the user," the fact of the matter is that the jury was instructed that prudence was to be considered in terms of an "ordinary and prudent buyer," appellant's append. 2 at 302, not in terms of whether plaintiff himself was prudent in using the boat. In the final analysis, the jury was never asked to consider plaintiff's conduct in deciding whether the boat was unreasonably dangerous. Second, contrary to plaintiff's assertions, the court's instruction to the jury on the misuse defense did not give an "aura of court acceptance" of this defense. Rather, an objective reading of the instruction reveals the court simply informed the jury of defendant's contentions and instructed it to decide whether plaintiff misused the product and, if so, whether such misuse was foreseeable to defendant:

> Defendant contends by way of defense that the plaintiff's injuries occurred as a proximate result of his misuse of the product. A manufacturer or seller is entitled to expect a normal use of his product. If plaintiff's injuries occurred because of his use of the product in a manner for which the product is not adapted and not reasonably foreseeable by the defendant, then the plaintiff cannot recover. You must determine whether the plaintiff was using the product at the time of the accident in a manner for which the product was adapted and which was reasonably foreseeable to defendant.

Appellant's append. 2 at 306.

In conclusion, we find no error on the part of the district court in admitting evidence of misuse or in instructing the jury on the misuse defense.

7

**B. District court's refusal to allow jury to view boat during deliberations**

At approximately 10:50 a.m. on the second day of deliberations, the jury sent a note to the district court asking: "Is the boat still here. If it is, may we see it again." Appellant's append. 2 at 266.

The district court read the jury's note to counsel on the record, and a discussion ensued concerning how the court should respond to the note. Although plaintiff's counsel urged the court to allow the jurors to view the boat, defense counsel objected on several grounds. Based upon defense counsel's representation that the boat was in storage several hours away from the courthouse, and based upon the fact that numerous photographs of the boat had been admitted into evidence and were available to the jury, the district court concluded that viewing the boat was "not convenient nor proper at this juncture." Appellant's append. 2 at 464. Accordingly, the district judge handwrote "No" on the note and returned it to the jury.

On appeal, plaintiff challenges the court's refusal to allow the jury to view the boat. Specifically, plaintiff claims by refusing to honor the jury's request to view the boat, the court "supplanted [its] judgment for that of the jury as to what the jury required to render its decision." Appellant's br. at 22. Plaintiff further claims the court's refusal "is a form of commenting on the evidence, and constitutes an impermissible invasion of the province of the jury." Id.

The decision whether to accede to a jury's request to review testimony, exhibits, or other items during deliberations is generally left to the sound discretion of the district court. See Johnson v. Richardson, 701 F.2d 753, 757 (8th Cir. 1983). Because the boat at issue here was neither marked as an exhibit nor readily accessible for viewing by the jury

8

during deliberations, we find no abuse of discretion on the part of the district court in denying the jury's request.

## C.  District court's response to jury's precedent note

At 11:15 a.m. on the second day of deliberations, the jury sent a note to the district court which asked, in pertinent part:  "Is it our responsibility to set a legal [precedent] for bow riding boats -- and the boating industry?"  Appellant's append. 2 at 268.  After reading the note to counsel and discussing with counsel how best to respond,[2] the court sent back the note with the following response: "No - your duties as jurors are fully encompassed in the instructions and verdict form provided you."  Appellant's append. 2 at 268.

On appeal, plaintiff claims the court's response was erroneous.  In particular, plaintiff argues that "when a jury renders its verdict, it necessarily creates a legal precedent, at least with respect to the design in question."  Appellant's br. at 20.  Moreover, plaintiff argues, the response was improper because it allowed the jury to consider the legal consequences of its verdict.

A district court's actions in responding to questions from the jury, as well as supplemental instructions given to the jury, are reviewed for abuse of discretion.  United States v. Mitchell, 67 F.3d 1248, 1252 (6th Cir. 1995), cert. denied 116 S.Ct. 971 (1996).  At present, there is considerable disagreement whether it is proper for a district court, in a civil jury case in which a special verdict or special interrogatories are utilized, to instruct

---

[2]  Reviewing the transcript of the discussion, we are not convinced that plaintiff's counsel adequately objected to the district court's proposed response.  Appellant's append. 2 at 465-66. Nevertheless, we proceed to review this issue on the merits.

or otherwise inform the jury of the legal consequences of its answers. See e.g., In re Aircrash in Bali, 871 F.2d 812, 815 (9th Cir.) (citing and discussing cases on each side of the issue), cert. denied, 493 U.S. 917 (1989); see also James A. Henderson Jr., et al., Optimal Issue Separation in Modern Products Liability Litigation, 73 Tex. L. Rev. 1653, 1699 n. 98 (1995). This court has not previously decided this question, and we find it unnecessary to reach the question in this case.

Assuming, without deciding, that it would be improper for a district court to inform a jury of the legal consequences of its special verdict or answers to special interrogatories, we conclude there was no error on the part of the court in the present case in responding to the jury's "precedent" question. Clearly, the response did not inform the jury of the consequences to plaintiff or defendant of its answers on the special verdict form. Rather, the court simply indicated it was not the jury's responsibility to establish precedent for the boating industry. Moreover, although plaintiff argues the court's answer of "No" was incorrect, we find this argument less than convincing. Plaintiff has cited no cases, and we have found none, supporting his assertion that it is a jury's responsibility to establish precedent for an entire industry. Although we acknowledge that verdicts can sometimes have repercussions on an entire industry, we conclude a jury's responsibility is confined solely to deciding the facts before it, not to establishing precedent for an entire industry. See generally Kitchens v. Bryan County Nat. Bank, 825 F.2d 248, 251 (10th Cir. 1987) ("The jury . . . has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact."); 1 William Holdsworth, A History of English Law, 347-50 (7th ed.

10

rev. 1956) (noting one of the basic advantages of the civil jury is that jury findings do not result in the creation of binding precedent).

For these reasons, we find no abuse of discretion on the part of the district court in responding to the jury's "precedent" question.

## D. District court's response to jury's request to make statement

At approximately 1:00 p.m. on the second day of deliberations, the jury sent a note to the district court asking: "Is there a way if we vote <u>No</u> to question #1 [asking whether the boat was in a defective condition that made it unreasonably dangerous to consumers or users] -- that we can make a statement to the Court regarding our verdict." Appellant's append. 2 at 270. The court read the note to counsel on the record, and a discussion ensued between the court and counsel concerning how best to respond. Although plaintiff's counsel objected "to any answer to that question by the Court other than no," appellant's append. 2 at 466, the district judge handwrote the following response on the note and returned it to the jury at approximately 1:30 p.m.:

> No, you cannot make a statement that is to be considered a part of your verdict. You must make your decision as you have been instructed and in accordance with the questions on the Special Verdict Form. After your verdict has been received by the court and you have been polled to determine that your verdict is unanimous, the court will give further consideration to your request.

Appellant's append. 2 at 270.

Immediately thereafter, the jury sent another note to the court asking: "What is the difference between unreasonably dangerous & unsafe. Also define defect." Appellant's append. 2 at 271. After reading the note to counsel and conferring on a response, the district judge handwrote a response on the note telling the jury to refer to "instruction #27

11

as well as all other instructions given." Id. Instruction 27 informed the jury how to determine whether a product is defective and unreasonably dangerous to a user.

Later that afternoon, the jury returned a verdict in favor of defendant, having unanimously concluded the boat was not unreasonably dangerous. After polling the jurors, the court informed them that, if they so desired, they could make "any statement [they] would like." Appellant's append. 2 at 475. In response, one of the jurors stated:

> This was a very hard decision for all of us to make. I would like to direct a statement to Wellcraft. Even though we found that the boat was not unreasonably dangerous or defective, we do 100 percent feel that the boat was unsafe. And we want to charge you with extra caution to try and design boats that would preclude anyone from having an accident of this nature.

Appellant's append. 2 at 475-76.

Plaintiff filed a motion for new trial arguing, in part, that the district court erred in responding to the jury's note asking if it could make a statement regarding its verdict. Specifically, plaintiff argued the jury was deadlocked at the time it sent the note, and the court's response effectively allowed the jury to break its deadlock "by giving one of the [deadlocked] groups the opportunity to make its statement by verdict and the other group its opportunity to make its statement through the post-verdict statement." Appellant's append. 2 at 354.

Plaintiff reiterates his arguments on appeal, claiming the court's response to the note "led the jury to believe that it could make a statement outside the confines of its special verdict and that such a statement would have some kind of legal effect." Appellant's br. at 30. Further, plaintiff claims "the jury may very well have . . . reason[ed] that as long as they could send Wellcraft a message that the boat was 100%

unsafe, a finding of unreasonable dangerousness was unwarranted."[3]  Id.  Accordingly, plaintiff argues, the court abused its discretion, and he is entitled to a new trial.

As previously stated, a district court's actions in responding to questions from the jury, as well as supplemental instructions given to the jury by the district court, are reviewed for abuse of discretion.  Mitchell, 67 F.3d at 1252.  Nevertheless, "'[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.'"  United States v. Arias-Santos, 39 F.3d 1070, 1076 (10th Cir. 1994) (quoting Bollenbach v. United States, 326 U.S. 607, 612-13 (1946)), cert. denied 115 S. Ct. 1156 (1995).

In reviewing the limited record on appeal, we are specifically concerned about a portion of the district court's three-sentence response to the jury's note.  Although the court clearly and correctly indicated in the first two sentences of its response that the jury could not make a statement that would be considered part of the verdict, and that the jury's decision must be made in accordance with the questions on the special verdict form, plaintiff argues the last sentence of the court's response encouraged a compromise verdict when it stated:  "After your verdict has been received by the court and you have been polled to determine that your verdict is unanimous, the court will give further consideration to your request," appellant's append. 2 at 270.  In our opinion, the preferred practice would have been to omit the last sentence entirely.  This would have resulted in a clear and unequivocal response to the jury's inquiry, yet would have allowed the court, after the verdict was entered, to permit jurors to communicate with the court, the parties,

_____

[3] We note this description of the juror's statement is inaccurate.  The juror stated "we do 100 percent feel that the boat was unsafe," not that "we do feel that the boat was 100% unsafe."

13

and the attorneys. Here, plaintiff is concerned with the effect the court's response may have had upon the jury's deliberations. Plaintiff does not contend it would be error for the court to later decide to permit the jury to make a statement, after its verdict was final; his challenge is based upon the court announcing the potential for that opportunity during the jury's deliberations.

Assuming without deciding that the district court abused its discretion in responding to the jury's question, we find no basis for reversing the verdict. An error on the part of the court in responding to a jury inquiry does not require reversal unless the error affected the substantial rights of a party. See Acree v. Minolta Corp., 748 F.2d 1382, 1386 (10th Cir. 1984) ("The harmless error rule applies equally to supplementary instructions as it does to any other ruling by the trial court."); see also Fed. R. Civ. P. 61. Here, contrary to plaintiff's assertions, the district court's response did not immediately lead to a verdict. Rather, the jury continued to deliberate and sent out an additional note asking for clarification of the terms "unreasonably dangerous" and "defect." Only after the court responded to this additional inquiry, and after continued deliberations, did the jury return its verdict in favor of defendant. Thus, we are not persuaded that the court's response broke the jury's deadlock. Moreover, we again note the trial transcript is not included in the record on appeal. Although plaintiff speculates the verdict would have been different had the court's response been different, we have no basis for reaching that conclusion without first reviewing the evidence that was admitted at trial. See 10th Cir. R. 10.1.1 ("It is the appellant's responsibility to order and provide all portions of the transcript necessary to give the court of appeals a complete and accurate record of the proceedings insofar as such proceedings relate to the issues raised on appeal."). On the

14

record presented, we are unable to conclude that plaintiff was prejudiced by the court's response to the jury's note.

**E. Jury confusion**

Plaintiff contends he is entitled to a new trial because of jury confusion. In support of this contention, plaintiff argues the jury's notes to the court asking whether they could make a statement explaining their verdict, and asking the difference between "unreasonably dangerous" and "unsafe," evidence confusion. In addition, plaintiff argues the post-verdict statement by one of the jurors provides further evidence of jury confusion. Based upon these factors, plaintiff claims the jury "wanted to say that the boat was unreasonably dangerous (as the law understands that term), but, because [they] misunderstood the meaning of unreasonably dangerous, [they] could not." Appellant's br. at 30. In short, plaintiff claims the verdict does not accurately represent the jury's findings.

Plaintiff raised a similar argument in his motion for new trial. In rejecting this motion, the district court held:

> With regard to the only issue that the jury considered, whether the boat defendant manufactured was unreasonably dangerous, the jury's conclusion was based on the abundant evidence presented by defendant's expert witnesses, evidence that clearly formed a reasonable basis for the verdict.
> . . . Plaintiff also points to the statement made by one of the jurors following the delivery of the jury's verdict as evidence that the jury was confused, or as evidence that the jury actually intended to rule in plaintiff's favor. To the contrary, it appears to the court that the jury considered the issues carefully, and knew exactly what they were doing. The statement made by juror Clayton following the verdict indicates that some members of the jury may have felt that defendant could have done better in designing the boat, but the verdict clearly shows that the jury understood the nature of the legal standard for finding defendant legally liable. There is no inconsistency in this.

15

Appellant's append. 2 at 369.

Reviewing the limited record on appeal, we find no basis for disturbing the district court's conclusions on the confusion issue. Although plaintiff claims the jury did not understand the meaning of "unreasonably dangerous," it is significant to note that plaintiff has not challenged any of the instructions given by the court to the jury, and has not claimed the court should have given additional or supplemental instructions to help clarify the terms at issue. Rather, plaintiff's argument is entirely speculative and could arguably be raised in any case in which a jury presents questions to a trial court. As we have previously noted, "a verdict will not be upset on the basis of speculation" about possible jury confusion. Howard D. Jury v. R & G Sloane Mfg. Co., 666 F.2d 1348, 1351 (10th Cir. 1981). Additionally, we note that plaintiff's attempt to impeach the jury's verdict based upon a juror's post-verdict statement is prohibited by Federal Rule of Evidence 606(b). See United States v. Wickersham, 29 F.3d 191, 194 (5th Cir. 1994) (noting Rule 606(b) has been used to bar testimony even in cases where a former juror states a jury misunderstood instructions); United States v. Black, 843 F.2d 1456, 1464 n. 7 (D.C.Cir.1988) (juror's affidavit is incompetent to impeach verdict for internal error); see also Howard D. Jury, 666 F.2d at 1352 (holding that, ordinarily, even direct testimony from jurors is incompetent to impeach matters inherent in a verdict).

## F. Cumulative error

Finally, plaintiff argues the district court's responses to the jury's notes and questions, taken as a whole, prejudiced and confused the jury. For the reasons set forth above, we conclude there was no error on the part of the district court. Accordingly, we

reject plaintiff's claim of cumulative error.  Getter v. Wal-Mart Stores, 66 F.3d 1119, 1125 (10th Cir. 1995) (noting cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors), cert. denied 116 S. Ct. 1017 (1996).

The judgment of the district court is AFFIRMED.

95-4060, Allen v. Minnstar

LUCERO, Circuit Judge, concurring.

I concur in today's decision as ably expressed by Judge Briscoe. I agree that considering the first two sentences of the trial court's answer, any error in the court's response to the jury's request to make an oral statement in addition to its verdict did not adversely affect the substantial rights of the appellant, and was harmless. This should end our analysis.

My inability to join fully in the majority opinion, which causes me to write separately, results from my colleagues' reliance, as an alternative basis, on appellant's failure to designate the trial transcript -- apparently in its entirety -- in order to disprove harmlessness. I find my colleagues' reliance troublesome in that it appears to place a burden on all appellants to designate such portions of the record necessary to counter harmlessness, or risk an adverse determination. The present case is particularly nettlesome because it is unnecessary for us to have additional portions of the record before us in order to arrive at the conclusion that we have reached today.

Our decision should not be read as holding that an appellant invariably carries a burden to disprove harmlessness. Such a reading needlessly enters the much conflicted body of jurisprudence regarding burdens or presumptions in harmless error analysis in civil cases. Compare Lusby v. T.G. & Y. Stores, Inc., 796 F.2d 1307, 1312 n.4 (10th Cir. 1986) ("In harmless error analysis the beneficiary of the error (usually the appellee) has the burden to show that the error almost surely did *not* affect the outcome of the case."), cert. denied, 479 U.S. 884 (1986) with Vincent v. Young, 324 F.2d 266, 269 (10th Cir. 1963) ("A litigant who seeks to have a judgment set aside because of an erroneous ruling

has the burden of showing prejudice.")

Depending on the nature or type of error at issue, more recent authority eschews the use of burden shifting devices in harmless error inquiries. In O'Neal v. McAninch, 115 S. Ct. 992, 994-95 (1995), the Supreme Court explained:

> we deliberately phrase the issue in this case in terms of a judge's grave doubt, instead of in terms of "burden of proof." The case before us does not involve a judge who shifts a "burden" to help control the presentation of evidence at trial, but rather involves judges who apply a legal standard (harmlessness) to a record that the presentation of evidence is no longer likely to affect. In such a case, we think it conceptually clearer for the judge to ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?" than for the judge to try to put the same question in terms of proof burdens (*e.g.,* "Do I believe the party has borne its burden of showing . . .?").

Significantly, the O'Neal Court made an additional admonition: it remains "'the responsibility of the . . . [appellate] court, once it concludes there was error, to determine whether the error affected the judgment. It must do so without the benefit of such aids as presumptions or allocated burdens of proof that expedite fact-finding at the trial.'" Id. at 995 (quoting Roger J. Traynor, The Riddle of Harmless Error 26 (1970)).

O'Neal was decided in a habeas context, and I am mindful that while technically a civil action, a habeas case involves errors which allegedly "occurred in a *criminal* proceeding . . . [where] someone's custody, rather than mere civil liability, is at stake." Id. at 996. However, O'Neal itself notes that

> even if, for argument's sake, we were to assume that the civil standard for judging harmlessness applies to habeas proceedings . . . *it would make no difference* . . . . For relevant authority rather clearly indicates that, either way, the courts should treat similarly the matter of "grave doubt" regarding the harmlessness of errors affecting substantial rights . . . .

Id. at 997 (emphasis supplied).

A "burden-free" approach seems to have been applied in Tenth Circuit civil cases

decided after O'Neal.  In Mehojah v. Drummond, 56 F.3d 1213 (10th Cir. 1995), the court simply stated that the harmless error "statute applies to both criminal and civil cases.  Applying the nonconstitutional standard for harmless error, we are satisfied that the erroneous exclusion of the evidence did not have a substantial influence on the verdict, nor do we have grave doubt as to whether it had such an effect."  Id. at 1215-16 (citing O'Neal).  Additionally, a "burden-free" approach is consistent with other authorities.  See 28 U.S.C. § 2111 (silent as to burden of proof); Fed. R. Civ. P. 61 (silent as to burden of proof); 11 Charles A. Wright et al., Federal Practice and Procedure, Civil 2d, § 2883 (1995) (noting that statements in cases regarding presumptions and burdens of proof in a harmless error context are of "doubtful value," and "seem to be contrary to . . . [Supreme Court warnings] 'against attempting to generalize broadly, by presumptions or otherwise.'")

Because we have unanimously concluded that the alleged error complained of here does not affect the appellant's substantial rights and is harmless, I think it best to leave for resolution at a later date issues surrounding "burden-free" harmless error analysis, including the related issue of designation of the record.