**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 12, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DAVID HELMER; FELICIA MUFTIC;
FELICIA MUFTIC as personal
representative of the Estate of Michael
Muftic, on behalf of themselves and all
others similarly situated,

     Plaintiffs - Appellants,

v.

                             No. 15-1214

GOODYEAR TIRE & RUBBER CO., an
Ohio corporation,

     Defendant - Appellee.
_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:12-CV-00685-RBJ-MEH)**
_____

Rick D. Bailey, Burg Simpson Eldredge Hersh & Jardine, Englewood, Colorado (Diane
Vaksdal Smith, David K. TeSelle, and Seth A. Katz, Burg Simpson Eldredge Hersh &
Jardine, Englewood, Colorado, Gary E. Mason, Whitfield Bryson & Mason LLP,
Washington D.C., Michael Flannery, and Katherine Van Dyck, Cuneo Gilbert & Laduca
LLP, St. Louis, Missouri, and Washington D.C., with him on the briefs), for Plaintiffs-
Appellants.

David L. Lenyo, Garfield & Hecht, P.C., Aspen, Colorado (L. Michael Brooks, Jr.,
Wells, Anderson & Race, LLC, Denver, Colorado, Chad J. Schmit, Garfield & Hecht,
P.C., Aspen, Colorado, Roger P. Thomasch, and David M. Strauss, Ballard Spahr LLP,
Denver, Colorado, with him on the brief), for Defendant-Appellee.
_____

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.

_____

Plaintiffs David Helmer and Felicia Muftic[1] represent a certified class of homeowners who contend a radiant-heating hose, the Entran 3, manufactured by Goodyear Tire & Rubber Company ("Goodyear") suffered design defects leading to cracks and leaks. At trial, Goodyear argued the leaks were caused by third parties' improper installations. The jury returned a verdict in favor of Goodyear, concluding the Entran 3 was not defectively designed. On appeal, Plaintiffs argue that insufficient evidence supported the district court's instruction on nonparty fault. They further argue that the district court failed to require proof of a necessary fact before instructing the jury regarding Colorado's presumption that a product is not defective if ten years have passed since it was first sold. Colo. Rev. Stat. § 13-21-403(3). We conclude that any error in the third-party liability instruction was harmless, and the inclusion of the instruction as to the presumption was proper. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In the late 1980's, Goodyear designed and manufactured the Entran 3 hose for Chiles Power Supply Company d/b/a Heatway Radiant Floors and Snowmelting ("Heatway"). The hose is used to convey hot fluid to provide radiant heating in structures, including homes. Thus, it is installed permanently under flooring, in walls and ceilings, and in concrete. The parties do not dispute that Entran 3 has an expected useful life of greater than forty years. From 1992 to 1996, Goodyear produced approximately

_____

[1] Muftic participates in this appeal in her personal capacity and as the personal representative of the Estate of Michael Muftic.

2

thirty-three million feet of Entran 3, which it sold exclusively to Heatway. Heatway provided a product guarantee to homeowners and published an installation manual for the hose. In 1996, Goodyear ceased manufacture of Entran 3 because "the potential for product related claims over[rode] the commercial justification for pursuing th[e] market."

Entran 3 hoses were installed in the Colorado homes of Plaintiffs Helmer and Muftic. Helmer's hose was installed when his home was built in 1992-93, and was first observed leaking in April 2010. He suffered severe leaks in the fall of 2013. The Muftics' hose was installed in 1994-95, and developed serious leaks in June 2010 and December 2014. At trial, Plaintiffs presented evidence that Entran 3 hoses had developed splits or leaks in five other Colorado homes as well.

In 2012, Plaintiffs filed this class action alleging defective design. They presented evidence that the ethylene-propylene diene monomer ("EPDM") rubber used in the inner layer of Entran 3 was not suitable to carry hot liquid for the lifetime of a home, and that a design defect caused inconsistent thickness and bonding between the layers of the hose, allowing oxygen to permeate into the system. Plaintiffs claim these design choices destined the product to crack, leak, and burst from foreseeable use.

Goodyear argued that the hose was not defectively designed, and that any leaking hoses resulted from improper installation. It presented evidence suggesting that whoever installed the relevant systems had used improper clamps and bent the hoses too tightly in most of Plaintiffs' homes. It also argued that Heatway negligently failed to provide custom designs, failed to install Entran 3 heating systems, and failed to provide necessary instructions for installation and maintenance of the systems, as promised to Goodyear.

3

Specifically, David Maguire, the engineer in charge of developing Entran 3, testified that Heatway represented to Goodyear that it would design, supervise, inspect, test, and maintain every system it sold. Maguire documented these promises and representations in a trip report he prepared after a meeting with Heatway. He also testified the promises were never kept. Instead, Goodyear argued that Heatway generally sold Entran 3 hoses for installation by third parties and never inspected or tested the systems. Goodyear thus designated Heatway as a nonparty at fault under Colo. Rev. Stat. § 13-21-111.5(3)(b).

Goodyear also presented evidence that more than ten years had passed since Entran 3 first went on the market, and the parties agreed that no lawsuit had been filed alleging the hose was defective in the ten years after Entran 3 was first sold in Colorado. Goodyear thus invoked § 13-21-403(3), which imposes a rebuttable presumption that a product is not defective if ten years have passed since the product was first sold.

After the close of evidence, Plaintiffs moved for judgment as a matter of law under Fed. R. Civ. P. 50(a), arguing that Goodyear failed to offer any evidence to support Heatway's alleged nonparty fault, and that Goodyear was not entitled to the § 13-21-403 presumption. The district court ruled against Plaintiffs, finding sufficient evidence that Heatway may have contributed to the leaks by failing to inspect or install the systems. In addition, the district court determined the statutory presumption unambiguously applied. Accordingly, the court instructed the jury that if it concluded that a design defect in Entran 3 was a cause of the damages or losses, the jury must then determine whether improper installation contributed to the damages and decide the comparative percentages of fault attributable to Heatway and an installer. Similarly, the court's special verdict

4

form instructed the jury to consider Heatway's liability only if it determined Goodyear had not defectively designed the Entran 3. The court also instructed that the jury must presume that the hose was not defective if it "was sold for the first time for use or consumption ten or more years before any claimed damages or losses were incurred by the Plaintiffs."

During deliberations, the jury inquired of the court: "[w]hen did Heatway go out of business and why." The court refused to answer because the question asked for additional evidence. Ultimately, the jury returned a verdict in favor of Goodyear, determining that the Entran 3 was not defectively designed. Because it did not find a design defect, the jury did not reach questions regarding nonparty fault. After trial, Plaintiffs filed a renewed motion for judgment as a matter of law pursuant to Rule 50(b), and a Rule 59 motion for a new trial, again raising the issues of Heatway's nonparty fault and the statutory presumption. The district court denied both motions and this appeal followed.

## II

We review de novo a district court's decisions regarding Rule 50(a) and 50(b) motions, applying the same standards as the district court. Elm Ridge Expl. Co. v. Engle, 721 F.3d 1199, 1216 (10th Cir. 2013); Hardeman v. City of Albuquerque, 377 F.3d 1106, 1112 (10th Cir. 2004). In diversity cases "federal law governs the appropriateness of a Rule 50 motion, while the substantive law of the forum state controls the analysis of the underlying claims." Wolfgang v. Mid-America Motorsports, Inc., 111 F.3d 1515, 1522 (10th Cir. 1997). In reviewing the denial of

5

judgment as a matter of law, we "determine whether there is evidence upon which the jury could have properly found a verdict for the nonmoving party." Id. In other words, we may find error "only if the evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." Id. (quotation omitted). We "construe the evidence and inferences therefrom . . . most favorably to the nonmoving party." Id.

**A**

Plaintiffs suggest Goodyear presented insufficient evidence to support the instruction on Heatway's nonparty liability. Under Colorado law, a defendant may designate a nonparty at fault as a defense to liability. § 13-21-111.5(3)(b). Because Goodyear designated Heatway as a nonparty at fault, the jury instructions and the verdict form directed the jury to apportion liability if it decided that Entran 3 was defectively designed. Because the jury found Entran 3 was not defectively designed, it did not proceed to the subsequent questions on the verdict form concerning nonparty fault.

Even if Plaintiffs are correct that insufficient evidence supported Heatway's nonparty liability, the instruction did not affect the jury's verdict.[2] A jury's negative answer to a threshold question of liability may render a verdict form's subsequent erroneous questions harmless. See Allen v. Minnstar, Inc., 97 F.3d 1365, 1369 (10th

---

[2] Plaintiffs do not contend there was insufficient evidence to support a finding that the hoses were installed incorrectly, but suggest insufficient evidence supported a finding that Heatway was liable for any improper installation.

Cir. 1996). In <u>Allen</u>, the plaintiff alleged that a boat was unreasonably dangerous because passengers could be ejected during sharp turns. <u>Id.</u> at 1367. A jury returned a verdict in favor of the defendant manufacturer. <u>Id.</u> at 1367-68. On appeal, the plaintiff argued an instruction on the defense of misuse was improper. <u>Id.</u> at 1368. But because the jury found the boat was not unreasonably dangerous, it never reached the question of misuse. <u>Id.</u> at 1369. The challenged question thus played no part in the verdict, and the <u>Allen</u> court concluded there was "no error on the part of the district court . . . in instructing the jury on the misuse defense." <u>Id.</u> at 1370.

Similarly, because the jury concluded Entran 3 was not defectively designed, it did not reach any question as to nonparty liability. Thus, even assuming insufficient evidence of nonparty fault, any error was harmless. <u>See</u> Fed. R. Civ. P. 61; <u>Staley v. Bridgestone/Firestone, Inc.</u>, 106 F.3d 1504, 1512 (10th Cir. 1997) ("Because the jury found no liability on the part of the only named defendant, there was no reason for the jury to assign or apportion fault to other parties."). Plaintiffs concede as much when they argue: "the whole question of Heatway's negligence is utterly irrelevant to the question of whether Goodyear was liable for design defect—such negligence could not affect Goodyear's liability, only the apportionment of damages." Absent a design defect, Goodyear is not liable and nonparty fault is irrelevant.

Plaintiffs nevertheless argue that the instruction on nonparty fault and inclusion of the issue on the verdict form confused the jury. They highlight the jury's question "[w]hen did Heatway go out of business and why," and contend the question demonstrates the jury considered Heatway's role as part of their deliberations as to

7

whether a design defect existed. We decline to conjecture as to why the jury asked the question. We "properly avoid such [speculative] explorations into the jury's sovereign space." Yeager v. United States, 557 U.S. 110, 122 (2009); see also Allen, 97 F.3d at 1373 ("[A] verdict will not be upset on the basis of speculation about possible jury confusion." (quotation omitted)).

Moreover, "[w]e generally presume that juries follow the instructions given to them." Cavanaugh v. Woods Cross City, 718 F.3d 1244, 1250 (10th Cir. 2013). In particular, if a "special verdict form was divided into clearly articulated subparts, there is no reason to question the common sense assumption that the jury proceeded logically to answer the questions in order, following the judge's instruction." Osteguin v. S. Pac. Transp. Co., 144 F.3d 1293, 1295 n.4 (10th Cir. 1998). The district court instructed the jury to consider whether a design defect existed before considering third party fault. Jury Instruction No. 9 explained the elements of a design defect claim, and directed that if the jury found that any element had not been proved, the verdict must be for Goodyear. It then instructed that only if all elements had been proved, the jury was to consider Goodyear's affirmative defenses, including nonparty fault. Similarly, Jury Instruction No. 13 directed the jury to consider nonparty fault if it found "that a design defect in Entran 3 was a cause of damages or losses." Thus, the instructions and the verdict form together instructed the jury to consider Heatway's nonparty fault only if it found the Entran 3 was defectively designed. We conclude Plaintiffs have not demonstrated prejudice from the instruction as to Heatway's liability or inclusion of the issue on the verdict form.

8

Any error as to that instruction was harmless, and the district court did not err in denying Plaintiffs' Rule 50 motions.

**B**

Plaintiffs argue the district court erred in denying their Rule 50 motions as to presumptions arising in product liability cases. In particular, they argue the court must consider a product's useful life in determining whether Colorado's presumption applies. In Colorado, "[t]en years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective." § 13-21-403(3). A district court "shall instruct the jury concerning the presumption" if the court has determined "by a preponderance of the evidence that the necessary facts giving rise to a presumption have been established." § 13-21-403(4). Plaintiffs argue that the phrase "necessary facts giving rising to the presumption" is ambiguous, and the presumption should only be triggered if the product has been used beyond its useful safe life.[3]

In interpreting § 13-21-403, we must give the statute the meaning it would have in the Colorado courts. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1304 (10th Cir. 2010). Because there is no Colorado decision considering whether "the necessary facts" include a product's useful safe life, we "must attempt to predict what the state's highest court would do." Id. (quotation omitted). Our primary duty is to

---

[3] Although we entertain doubts on the matter as to certain parties, we do not consider whether the presumption was in fact rebutted, as Plaintiffs do not raise that issue on appeal.

give full "effect to the intent of the General Assembly, looking first to the statute's plain language." Vigil v. Franklin, 103 P.3d 322, 327 (Colo. 2004). "[T]he statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said." Resolution Tr. Corp. v. Heiserman, 898 P.2d 1049, 1054 (Colo. 1995). "If the statute is unambiguous and does not conflict with other statutory provisions, we need look no further." People v. Luther, 58 P.3d 1013, 1015 (Colo. 2002).

A plain reading of the statute as a whole refutes the claim that the phrase "the necessary facts giving rise" in paragraph four of the statute is ambiguous.[4] The preceding subsections of the statute delineate three other scenarios triggering a rebuttable presumption as to a product's defectiveness. For example, § 13-21-403(1) imposes a rebuttable presumption if the product conformed to the state of the art or complied with any applicable code, standard, or regulation. Read in this context, § 13-21-403(4) simply refers back to the preceding paragraphs, directing courts to issue an instruction on a rebuttable presumption once the facts in the relevant subsections have been demonstrated.[5] Looking to § 13-21-403(3), the plain language

---

[4] Colorado courts have disagreed about when the ten-year period begins to run. Compare Downing v. Overhead Door Corp., 707 P.2d 1027, 1031-32 (Colo. App. 1985) (ten-year time period begins on date individual product was first sold), with Patterson v. Magna Am. Corp., 754 P.2d 1385, 1387 (Colo. App. 1988) (ten-year period runs from date product line was first sold). But that question does not play any part in our analysis because the hoses sold to Plaintiffs satisfy either test.

[5] Plaintiffs appear to agree with this assessment. They argue that § 13-21-403(4), which was enacted in 2003, merely refers to the legislature's "previous understanding" of the "necessary facts" to trigger the § 13-21-403(3) presumption.

states that the presumption is triggered when more than ten years have passed since the product was first sold on the market.

We acknowledge that the Colorado Supreme Court has read an additional fact into the language of § 13-21-403(3)—namely, that no other strict liability claims have been established against the particular product. Uptain v. Huntington Lab, Inc., 723 P.2d 1322, 1331 & n.10 (Colo. 1986). However, the Uptain court observed that "implicit in th[e] statutory language is the assumption that no other strict liability claims have been established against the particular product" because "the mere fact that a product has been marketed for ten years or more does not, without more, lead to the natural inference that the product is not defective." Id. Far from deeming the statutory language ambiguous, the Colorado Supreme Court held that the plain language of the statute necessarily required defendants to demonstrate that prior strict liability claims had not been established.

Similarly, Plaintiffs ask us to infer a useful safe life requirement. But Uptain notwithstanding, when Colorado courts "construe a statute, [they] do not adopt a construction that . . . injects additional terms." Dillard v. Indus. Claim Appeals Office, 134 P.3d 407, 409 (Colo. 2006). And nothing in the plain language of § 13-21-403(3) or (4) suggests courts must consider a product's useful safe life. To the contrary, in Mile Hi Concrete, Inc. v. Matz, 842 P.2d 198 (Colo. 1992), superseded on other grounds as stated in Kokins, 621 F.3d at 1305-06, the Colorado Supreme

Thus, Plaintiffs argue that any ambiguity in § 13-21-403(4) stems from ambiguity in § 13-21-403(3).

11

Court observed that a similar Kansas statute expressly created a presumption after a product's "useful safe life" had expired, whereas § 13-21-403(3) did not. Mile Hi, 842 P.2d at 204 n.11. Thus, Mile Hi suggests that the Colorado Supreme Court would not read a "useful life" requirement into § 13-21-403(3).

Plaintiffs do not cite any authority counseling against our conclusion. They suggest that the Model Uniform Products Liability Act (the "Model Act"), published after § 13-21-403(3), would create a presumption when the product has been used beyond its useful safe life. But even if the legislature could have relied on a model act not yet published, if "a legislature models an act on another statute but does not include a specific provision in the original, a strong presumption exists that the legislature intended to omit that provision." Kirchner v. Chattanooga Choo Choo, 10 F.3d 737, 738-39 (10th Cir. 1993).[6] Thus, the inclusion of a product's useful safe life in the Model Act weighs against reading the requirement into § 13-21-403(3).

Plaintiffs also cite the statute's legislative history, highlighting legislators' concern with the originally-proposed statute of repose, which would have served as an absolute cutoff for product liability claims after six years. The legislators were

[6] For the contrary proposition, Plaintiffs cite Fraley v. Am. Cyanamid Co., 570 F. Supp. 497, 503 (D. Colo. 1983), disapproved of on other grounds in Tafoya v. Sears Roebuck & Co., 884 F.2d 1330, 1336 (10th Cir. 1989). In Fraley, the district court looked to the Model Act to determine the date from which the ten-year period runs. Id. Because the ten-year period in that case had not yet expired, the court found that the presumption did not apply. Id. In dicta, the court also observed that, after ten years, the Model Act imposes a presumption that the product has been used beyond its useful safe life, and that "Colorado law utilizes this approach." Id. (quotation and emphasis omitted). For the reasons set forth herein, Fraley's observation is not persuasive.

12

concerned that, for some products, this date would be before the product's useful safe life had expired. But the final enacted statute is a rebuttable presumption, not a statute of repose. The legislators' concerns about a statute of repose play no part in our reading of the enacted presumption. Under § 13-21-403(3), a plaintiff advancing a strict liability claim against a product whose useful safe life has not expired may present evidence to rebut the presumption. But we decline to infer a useful safe life requirement as a "necessary fact" giving rise to a jury instruction as to the presumption. "Had the General Assembly intended otherwise, it could have used language to that effect." E-470 Pub. Highway Auth. v. Kortum Inv. Co., 121 P.3d 331, 333 (Colo. App. 2005). We thus reject Plaintiffs' sole challenge to this instruction.[7]

## III

The judgment of the district court is **AFFIRMED**.

---

[7] Plaintiffs also appeal the denial of their Fed. R. Civ. P. 59 motion, raising the same arguments as against the denials of their Rule 50 motions. We reject these arguments for the same reasons described supra.

13