COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESSE JUAREZ, | § | No. 08-07-00166-CR |
| Appellant, | § | Appeal from |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20060D02894) |
| | § | |

## O P I N I O N

Jesse Juarez appeals his conviction of aggravated assault with a deadly weapon. A jury found Appellant guilty and assessed his punishment at imprisonment for a term of four years. The trial court included in the judgment an affirmative deadly weapon finding. We affirm.

## FACTUAL SUMMARY

On February 18, 2006, thirty-five year old Sal Sanchez was spending the day with his three-year-old son Damian. Sanchez is a El Paso Police Officer but he was off-duty. Sanchez took Damian to his parents' house so Damian could play with his cousins. Around 4 p.m., Sanchez and Damian left the house in a Ford Explorer which bears a bumper sticker reading, "In Memory of Officer Andrew Barcena." Damian sat in the back seat, secured in a child restraint. As they waited at an intersection in northeast El Paso, a dark-blue SUV driven by Appellant pulled up behind Sanchez and stopped just short of his bumper. Appellant did not make contact but there was no space between the cars. There were three passengers in Appellant's vehicle--Juan Carlos Arreola, Joe Juarez (Appellant's brother), and George Reyna. After the light turned green, Sanchez proceeded onto U.S. Highway 54 and Appellant remained "right on [his] tail." Sanchez changed into

the left lane driving 40-45 miles per hour to give Appellant an opportunity to pass him, but Appellant drove in the right lane side-by-side with Sanchez. When Sanchez looked over at Appellant, he and his passengers flashed gang signs. Hoping Appellant would continue on his way, Sanchez slowed down even more, but one of the passengers began throwing beer bottles at Sanchez's vehicle. Two of the bottles missed, but one broke the right front passenger window. Some of the glass landed on Damian. After the window broke, Sanchez slowed down but Appellant also slowed his vehicle. Appellant then displayed a handgun in his right hand and laughed as he pointed it at Sanchez. Appellant fired the gun and a bullet struck the rear passenger door about four inches below Damian's car seat. Sanchez checked on his son, called 9-1-1, and provided a vehicle description and license plate number. Crime scene investigators recovered a bullet and bullet fragments from the Explorer, a spent shell casing from the ramp to U.S. 54, and broken pieces of bottle from U.S. 54 South.

A grand jury returned a three-count indictment against Appellant alleging that he committed aggravated assault with a deadly weapon against Sanchez (Count I), aggravated assault with a deadly weapon against Damian (Count II), and deadly conduct (Count III). At trial, Arreola testified that Sanchez started trouble with them by "flipping [them] off" and trying to crash into them. They thought Sanchez was a gang member. Arreola did not recall Reyna throwing beer bottles at Sanchez's vehicle, nor did he remember a shot being fired because he was too intoxicated. Joe Juarez also testified that Sanchez first became confrontational by "throwing fingers" at us and swerving his vehicle as if he were going to hit them. Juarez saw Reyna throw a quart-sized bottle of beer at the Explorer. Juarez claimed that Appellant's gun discharged accidentally and he did not know whether it hit the Explorer. He also denied seeing a child in the car.

The trial court granted a directed verdict on Counts II and III. The jury found Appellant guilty of Count I, made an affirmative deadly weapon finding, and assessed his punishment at

imprisonment for a term of four years.

## *ALLEN* CHARGE

In Point of Error One, Appellant contends that the trial court erred by including an *Allen*

charge during the guilt/innocence and punishment phases. He argues that an *Allen* instruction cannot

be given until the jury is deadlocked. The court's charge on guilt-innocence included the following

instructions concerning the jury's manner of deliberation:

(a) do not let bias, prejudice or sympathy play any role in your deliberations.

(b) in order to return a verdict, each juror must agree thereto;

(c) jurors have a duty to consult with one another to deliberate with a view of reaching an agreement, if it can be done without violence to individual judgment.

(d) each juror must decide the case for themselves, but only after an impartial consideration of the evidence with their fellow jurors.

(e) in the course of deliberations, a juror should not hesitate to re-examine their own views and change their opinion if convinced it is erroneous.

(f) No juror should surrender their honest conviction as to the weight or effect of the evidence solely because of the opinion of fellow jurors, or for the mere purpose of returning a verdict.

(g) If the jury is unable to reach a verdict, it will be necessary for the Court to declare a mistrial and discharge the Jury. The case will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empanelled in the same way this jury has been impanelled, and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same as the questions confronting you and there is not [sic] hope that the next jury will find those questions any easier to decide than you have found them.

The trial court's charge on punishment included similar instructions regarding the jury's

duties, and included a paragraph nearly identical to paragraph (g) above. Appellant did not object

to these instructions.

An *Allen*, or "dynamite," charge is a supplemental charge normally given to a deadlocked

jury which directs the jurors to examine the submitted questions and decide the case if the they are able to do so. *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896). It is not error to include in the court's main charge the instructions set forth above in paragraph (g). *Love v. State*, 909 S.W.2d 930, 936 (Tex.App.--El Paso 1995, pet. ref'd). Appellant argues that giving this instruction in the court's main charge is coercive. We noted in *Love* that there is extensive authority approving this instruction. *Id.*

An *Allen* charge is unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case. *See Arrevalo v. State*, 489 S.W.2d 569, 571 (Tex.Crim.App. 1973). While there may be some deficiency in the instruction, as long as it is not coercive an accused must show that jury coercion or misconduct occurred in fact. *Jackson v. State*, 753 S.W.2d 706, 712 (Tex.App.--San Antonio 1988, pet. ref'd).

We review the decision to give an *Allen* charge for an abuse of discretion. *See U.S. v. Wickersham*, 29 F.3d 191, 194 (5th Cir. 1994). Our inquiry focuses on whether it had a coercive effect on juror deliberation. *Howard v. State*, 941 S.W.2d 102, 123 (Tex.Crim.App. 1996).

The language used in the charge was not coercive and did not covey an opinion, comment on the case, or pressure jurors into reaching a particular verdict. *See Arrevalo*, 489 S.W.2d at 571. Appellant did not object to the charge or show that any jury coercion or misconduct occurred as a result of the charge. We overrule Point of Error One.

## SUFFICIENCY OF THE EVIDENCE

In Point of Error Two, Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction.

### *Standards of Review*

In reviewing the legal sufficiency of evidence, we consider all evidence in the light most

favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2181.

Appellate courts are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of an offense. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App. 2000), *citing Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex.Crim.App. 1996). In examining the factual sufficiency of the elements of the offense, all evidence is viewed in a neutral light, favoring neither party. *Clewis*, 922 S.W.2d at 129. In performing our review, due deference is given to the fact finder's determinations. *See Johnson*, 23 S.W.3d at 8-9. Evidence may be factually insufficient if it is so weak that it would clearly be wrong and manifestly unjust for the verdict to stand, or "the adverse finding is against the great weight and preponderance of the available evidence." *Johnson*, 23 S.W.3d at 11. The question that must be answered when reviewing factual sufficiency is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or proof of guilt, although ample if taken alone, is greatly outweighed by contrary proof. *Id.*

Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong"

or "manifestly unjust" simply because, on the amount of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of the conflict. *Id.* In order to find that evidence is factually insufficient to support a verdict, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

*Elements of the Offense*

The indictment alleged that Appellant intentionally or knowingly threatened Sal Sanchez with imminent bodily injury and that he used or exhibited a deadly weapon, to-wit: a firearm. A person commits assault if he intentionally or knowingly threatens another person with imminent bodily injury. TEX.PENAL CODE ANN. §22.01(a)(2)(Vernon Supp. 2009). A person commits aggravated assault if he commits assault under Section 22.01 and he uses or exhibits a deadly weapon during the commission of the assault. TEX.PENAL CODE ANN. §22.02(a)(2). In determining whether the defendant threatened the complainant, the crucial inquiry is whether the assailant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility. *Olivas v. State*, 203 S.W.3d 341, 345 (Tex.Crim.App. 2006).

*Analysis*

Appellant argues that the evidence is legally insufficient to prove beyond a reasonable doubt that he threatened Sal Sanchez with imminent bodily injury because the trial court granted directed verdicts as to Counts II and III. He reasons that the evidence is necessarily insufficient because the trial court, by granting the directed verdict as to Count II, must have found that Appellant did not intentionally or knowingly threaten Damian with imminent bodily injury. We understand Appellant

to argue that the jury's verdict is inconsistent with the directed verdict. But inconsistent verdicts do not require reversal for purposes of legal insufficiency. *Dunn v. United States*, 284 U.S. 390, 393-94, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *Jackson v. State*, 3 S.W.3d 58, 61-62 (Tex.App.--Dallas 1999, no pet.). Even if the verdicts appear inconsistent, we must review the evidence to determine whether it is sufficient to support the conviction.

Taken in the light most favorable to the verdict, the evidence showed that Appellant fired a handgun at Sanchez's vehicle and fired one shot which struck the right rear passenger door missing Damian by inches. Sanchez, who saw Appellant point the gun and fire it, was scared for himself and his son. A person of reasonable sensibility placed in these same circumstances certainly would have perceived an immediate threat of danger. We therefore conclude that the evidence is legally sufficient to prove beyond a reasonable that Appellant intentionally or knowingly threatened Sanchez with a deadly weapon. *See Robbins v. State*, 145 S.W.3d 306, 314 (Tex.App.--El Paso 2004, pet. ref'd)(evidence legally sufficient to support aggravated assault conviction where defendant pointed and fired a gun in victims' direction); *Cantu v. State*, 953 S.W.2d 772, 775 (Tex.App.--Corpus Christi 1997, pet. ref'd)(in aggravated assault prosecution, act of pointing a loaded gun at a police officer in pursuit constituted threatening conduct).

Viewed in a neutral light, there is evidence that Appellant and the occupants of his vehicle behaved in a threatening manner toward Sanchez by tailgating him and flashing gang signs at him. One of the passengers threw beer bottles at his vehicle and broke out the front passenger window. Sanchez testified that Appellant held a handgun, pointed it at the Explorer, and fired it. The jury also heard testimony from Appellant's brother, Joe Juarez, that the gun accidentally discharged. It was the jury's duty to assess credibility and resolve conflicts in the evidence. Even if the jury believed that the gun accidentally discharged, that does not render the evidence factually insufficient because

the State was not required to prove that Appellant intentionally or knowingly fired the weapon in order to prove that he threatened Sanchez with imminent bodily injury. The issue is whether Appellant acted in such a manner as would under the circumstances portend an immediate threat of danger to a person of reasonable sensibility. *Olivas*, 203 S.W.3d at 345. A reasonably sensible person in Sanchez's situation would perceive an immediate threat of danger upon seeing Appellant point a handgun at him. We find the evidence factually sufficient to support Appellant's conviction. Point of Error Two is overruled. The judgment of the trial court is affirmed.


November 12, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)