**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JUAN GARCIA, a/k/a Shorty,

    Defendant - Appellant.

No. 18-5012
(D.C. No. 4:17-CR-00021-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Following a jury trial, Juan Garcia was convicted of participating in a drug

conspiracy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii). On appeal,

Garcia claims the district court erred by refusing to dismiss the indictment on the

ground that the government's deportation of a witness before trial violated his Fifth

Amendment right to due process and his Sixth Amendment right to compulsory

process. He also appeals his 170-month within-guidelines prison sentence, claiming

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

it is substantively unreasonable because the district court over-emphasized the need for deterrence and did not give sufficient weight to his mitigating evidence. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

**Background**

In connection with an investigation into Antonio Martinez, a drug dealer in Oklahoma City, DEA officers learned that a vehicle carrying methamphetamine would be traveling from Oklahoma City to Tulsa on January 26, 2017. While surveilling the car by helicopter and on the ground, officers saw it stop at a gas station parking lot. The driver exited the car, walked over to a truck parked in the same lot, opened a passenger side door, then returned to the car carrying a box. The car got back on the highway and headed toward Tulsa with the truck traveling in tandem.

Officers conducted separate traffic stops of both vehicles. After a drug dog alerted on the car, officers searched it and found a cardboard box containing nearly three pounds of methamphetamine on the backseat. Gustavo Flores was driving the car, with Joel Ulloa as a passenger. Officers arrested Flores and Ulloa, who both made statements indicating that they had received the methamphetamine from the truck and that the truck was traveling with them to ensure that the drug deal was completed.

Officers at the car radioed these developments to the officers who had stopped the truck. The same drug dog—trained to detect residual drug odors—also alerted on the passenger door of the truck, where Garcia had been sitting. Officers at the truck

2

arrested Garcia and Roberto Dominguez, the driver of the truck. Garcia told officers he was riding to Tulsa with Dominguez because he planned to purchase a car there with the approximately $20,000 in cash he was carrying. The officers were unable to speak with Dominguez because he did not speak or understand English.

Dominguez, Garcia, Martinez, and Ulloa were charged with a federal drug conspiracy; Flores, a minor, was not formally charged. Shortly thereafter, the government moved to dismiss the indictment against Dominguez. After the court granted the motion, Dominguez was transferred to the custody of Immigration and Customs Enforcement (ICE) and was deported three weeks later after stipulating to removal. Martinez and Ulloa entered into plea agreements, and Flores entered into a pretrial diversion agreement. The government obtained a superseding indictment against Garcia, charging him with a broader drug conspiracy between November 2016 and the January 26, 2017, traffic stop.

Garcia moved to dismiss the indictment based on the government's deportation of Dominguez. For reasons discussed more fully below, the district court denied the motion, concluding that there was no evidence suggesting that the government had acted in bad faith in deporting Dominguez or that his deportation prejudiced the defense.

At trial, Flores and Martinez both identified Garcia, whom they knew as "Shorty," as the supplier of the methamphetamine they distributed between the dates charged in the indictment. Flores testified that Martinez had arranged for Flores to pick up methamphetamine from Garcia on numerous occasions and had given him

3

Garcia's phone number to facilitate the transactions. Martinez confirmed that Flores had made multiple deliveries of methamphetamine for him and that Garcia was his supplier.

With respect to the January 26, 2017, transaction, Flores explained that Garcia told him to meet him at the gas station, where he would be waiting in a blue truck. Flores and Garcia communicated by texts and calls during the drive. When he arrived at the gas station, Flores parked the car and went to the back of the truck, where he saw Garcia in the passenger seat and a man he had never seen before in the driver's seat. Pointing to the methamphetamine, Garcia told Flores "it was there" in a box. R. Vol. I at 552. Flores took the box, returned to the car, and continued to drive toward Tulsa, where he was to deliver the drugs. Video recorded by the Oklahoma Highway Patrol helicopter corroborated Flores's account of the events of January 26, and agents and officers described the traffic stops and the seizure of the methamphetamine, cash, and phones.

Phone records for the cell phones seized from the vehicles revealed ongoing communications between Garcia, Flores, and Martinez between November 2016 and January 2017. Flores and Martinez both identified calls and texts between them and Garcia, including texts with a picture of methamphetamine. Martinez also identified texts with the buyer and Garcia to arrange the January 26 transaction. Those texts discussed the pick-up and drop-off points and indicated that Garcia was planning to follow Flores while he delivered the drugs.

4

Garcia admitted that he was known as "Shorty" but denied being involved in drug trafficking. Consistent with his statements to police at the time of his arrest, Garcia testified that he was riding with Dominguez to Tulsa to purchase a car and that he had the cash, which he had saved through his cash-based construction clean-up business, for that purpose.

During deliberations, the jury asked about the availability of video evidence, indicating that it was "[l]ooking for credibility of witnesses." *Id*. at 821; Vol. II at 20. With the parties' agreement, the court told the jury that it had the evidence necessary to render a verdict. *Id*. Vol. I at 821; Vol. II at 20. After deliberating for an additional ten minutes, the jury found Garcia guilty of the charged conspiracy.

The district court adopted the advisory sentencing guideline range proposed in the Presentence Investigation Report (PSR), and after denying Garcia's motion for a downward variance, imposed a mid-range sentence of 170 months in prison.

## Discussion

### A. Denial of Motion to Dismiss

Garcia claims the government's deportation of Dominguez violated his rights to due process and compulsory process, and that the district court erred in denying his motion to dismiss the indictment on that basis. We disagree.

We review the denial of a motion to dismiss an indictment for an abuse of discretion. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1265 (10th Cir. 2006). A district court abuses its discretion if its decision "is based upon an error of law or a clearly erroneous finding of fact." *United States v. Lin Lyn Trading, Ltd.*, 149 F.3d

5

1112, 1117 (10th Cir. 1998) (internal quotation marks omitted); *see also United States v. Barajas-Chavez*, 358 F.3d 1263, 1267 (10th Cir. 2004) (explaining that an appellate court will affirm the denial of a motion to dismiss "unless there is a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment" (internal quotation marks omitted)).

To obtain dismissal of an indictment based on the government's deportation of a witness, the defendant must show both that the government acted in bad faith and that the deportation prejudiced the defense by eliminating testimonial evidence that would have been "material and favorable to the defense." *United States v. Iribe-Perez*, 129 F.3d 1167, 1173 (10th Cir. 1997) (internal quotation marks omitted). A court may deny a motion to dismiss based on the defendant's failure to satisfy either the bad faith or the prejudice prong. *See United States v. Caballero*, 277 F.3d 1235, 1242 (10th Cir. 2002) (concluding that the "failure to show the materiality of [the deported witness's] lost testimony absolves [the court] of examining the bad faith prong"); *see also Iribe-Perez*, 129 F.3d at 1173-74 (affirming denial of motion to dismiss based on defendant's failure to prove lost testimony was material and favorable, and not addressing whether the government acted in bad faith in allowing witness's voluntary departure).

With respect to bad faith, we note that this circuit has not yet decided what the standard is for determining when the government's deportation of a witness is in bad

faith,[1] and the parties disagree about both what that standard should be and whether the district court erred in concluding that Garcia was required to show that the government's "motivation [for the deportation] was to tactically disadvantage the defense." R. Vol. I at 272. We conclude that we need not resolve these issues, however, because the district court properly denied Garcia's motion to dismiss based on his failure to show that Dominguez's testimony would have been material and favorable to the defense. *See Caballero*, 277 F.3d at 1242.

To make that showing, Garcia did not have to provide a "detailed description" of the disputed testimony, *Iribe-Perez*, 129 F.3d at 1173 (internal quotation marks omitted), but he was required to make a "plausible showing that the testimony of the deported witness[ ] would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982). Evidence is material "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id*. at 874; *see also Richmond v. Embry*, 122 F.3d 866, 874 (10th Cir. 1997) (explaining that to be constitutionally material, excluded evidence must have been

---

[1] This court has held in an unpublished decision that the determination of bad faith "'must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.' Negligence is not enough to establish bad faith." *United States v. Gonzalez-Perez*, 573 F. App'x 771, 776 (10th Cir. 2014) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 56 (1988)). The court thus concluded that to constitute bad faith, "[t]here must be (1) willful conduct motivated by a desire to obtain a tactical advantage over the defense or (2) a departure from the government's normal deportation procedures." *Gonzalez-Perez*, 573 F. App'x at 776.

"of such an exculpatory nature that its exclusion affected the trial's outcome"). There is no such likelihood here.

First, there is no evidence about what Dominguez would have said if called to testify and no indication that the government prevented Garcia from interviewing Dominguez before he was deported or otherwise interfered with Garcia's efforts to obtain favorable evidence. *See Iribe-Perez*, 129 F.3d at 1173 (rejecting compulsory process and due process challenge based on deportation of witness where defendant had not "offered any credible reason to believe that [the deported witness] would in fact provide exculpatory testimony," explaining that to show constitutional materiality, the defendant must show "more than the mere potential for favorable testimony"); *see also Barajas-Chavez*, 358 F.3d at 1268 (concluding that defendant failed to show that deported witnesses' testimony would have been exculpatory, noting that defense counsel "admitted at the pre-trial hearing that he had not interviewed the witnesses and had no direct knowledge of their potential testimony").

Moreover, the evidence that Garcia distributed methamphetamine was overwhelming. Flores and Martinez both testified that Garcia (or "Shorty") was the supplier of the methamphetamine they distributed between November 2016 and the January 26, 2017, traffic stop. They testified in detail about his involvement in the conspiracy, including about his role in the January 26, 2017, transaction that led to their arrests, their text exchanges with him about logistics, and the photograph of drugs Flores texted to Garcia. Their testimony was corroborated by the evidence found on their and Garcia's phones, the officers' testimony, video footage, and the

8

drug dog's alert to the area of the truck where Garcia had been sitting. In the face of this evidence, we think it is highly unlikely that the jury would have rendered a different verdict, even if Dominguez had supported Garcia's claim that he knew nothing about the drugs and was traveling to Tulsa to purchase a car. Accordingly, the district court did not abuse its discretion in denying Garcia's motion to dismiss his indictment.

Contrary to Garcia's contention, the jury's question about the availability of additional video footage to support the witnesses' credibility does not undermine our conclusion that he failed to show that Dominguez's testimony was material. The jury heard evidence about the government's failure to interview and decision to deport Dominguez, and its question did not ask about the availability of additional witnesses.[2] The court's response, which Garcia did not object to, indicated that the jury had all the evidence it needed to reach a verdict, and the court's instructions explained that the jury was to make its "decision based only on the evidence [it] saw and heard" during trial and that "[i]t will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject" R. Vol. I at 328, 333; *see also id*. at 335-36 (credibility instruction). We presume that the jury followed its instructions, and that it understood the trial judge's response to its question. *See*

---

[2] In his opening brief, Garcia described the question as asking about the availability, not the credibility, of witnesses. Aplt. Br. at 10. The printed form is difficult to read, but the district court interpreted it as asking about credibility, not availability. Either way, the jury's question does not affect our conclusion that Garcia failed to establish that he was prejudiced by Dominguez's deportation.

*Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  The jury reached a guilty verdict within about ten minutes after the court responded to its question, and we will not speculate about what the jury was thinking when it asked the question or give the question more significance than the record suggests it had.  *Cf. Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1373 (10th Cir. 1996) (rejecting argument based on speculation about the meaning of the jury's question and its reaction to the court's response, explaining that such arguments could "be raised in any case in which a jury presents questions to a trial court," and that "a verdict will not be upset on the basis of speculation about possible jury confusion" (internal quotation marks omitted)).

## B.  Reasonableness of Sentence Imposed

Garcia also claims his 170-month sentence is manifestly unreasonable because the district court did not give sufficient weight to his lack of criminal and incarceration history and the fact that his immigration status made him ineligible for placement in lower-security or halfway-house facilities.  Again, we disagree.

"Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."  *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007).[3]  We review the substantive reasonableness of a sentence under the deferential abuse of discretion standard.  *United States v. Gordon*, 710 F.3d 1124, 1160

---

[3] Reasonableness also has a procedural component:  "whether the district court committed any error in calculating or explaining the sentence."  *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009).  However, Garcia does not challenge the procedural reasonableness of his sentence.

(10th Cir. 2013). A within-guidelines sentence like Garcia's is presumptively reasonable, and we will "find an abuse of discretion only if the district court was arbitrary, capricious, whimsical, or manifestly unreasonable when it weighed the permissible § 3553(a) factors." *United States v. Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir. 2014) (internal quotation marks omitted).

The trial court is in a far better position than a reviewing court to make credibility determinations, find facts, and "judge their import under § 3553(a)." *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks omitted). Thus, we defer to the sentencing court's factual findings as well as "its determinations of the weight to be afforded to such findings." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008); *see also Sanchez-Leon*, 764 F.3d at 1268 (explaining that the sentencing court "need not afford equal weight to each of the [§ 3553] factors"). Because the facts and law often "fairly support" a wide range of possible outcomes, we defer to the district court if the sentence imposed "falls within the realm of [the] rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). "That we might reasonably have concluded a different sentence was appropriate is insufficient to justify reversal of the district court." *United States v. Friedman*, 554 F.3d 1301, 1307-08 (10th Cir. 2009) (alterations and internal quotation marks omitted).

Here, because of the quantity of drugs involved, Garcia's conviction carried a ten-year mandatory minimum. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), 846. The PSR determined that Garcia's offense level was 34, based primarily on a drug

11

quantity of 1.58 kilograms of methamphetamine—the drugs seized on January 26, 2017, and two additional quarter-pound quantities Garcia supplied to Flores on December 19, 2016, and January 3, 2017. The offense level was also supported by a two-level enhancement for obstruction of justice based on Garcia's false testimony at trial. With his criminal history score of I, the PSR calculated Garcia's guidelines range as 151 to 188 months' imprisonment.

Garcia objected to the inclusion of drug quantities from earlier transactions and to the obstruction of justice enhancement. He also sought a downward variance to 120 months, the statutory mandatory minimum, arguing that he had no criminal record, that he would likely be deported and was ineligible for low-security and community-based placements available to citizens, and that a shorter sentence would reduce the disparity between his and his co-defendants' sentences.

The court overruled both of Garcia's objections to the calculation of his offense level and rejected his request for a downward variance. The court found that the obstruction of justice enhancement was appropriate because Garcia "committed perjury when he testified under oath that he did not know about the drugs in" the car the day of his arrest, R. Vol. III at 47. With respect to the inclusion of the additional drug amounts in the total drug quantity, the court noted that the evidence established that Flores had sent a photograph of the quarter-pound of methamphetamine he picked up from Garcia on December 19, 2016, and that Garcia arranged the January 3, 2017, transaction with Flores through a text exchange that specifically referenced a quarter-pound of methamphetamine. The court further noted that Garcia had "cited

12

no examples where the testimony was conflicting, vague, or unreliable," *id*. at 45, and found Martinez's and Flores's testimony about those and other drug transactions credible, *id*. at 46. Finally, the court rejected Garcia's request for a downward variance, explaining that it had considered "the totality of the circumstances of this case, including [Garcia's] lack of acceptance of responsibility, [his] perjury, and [his] distribution of large quantities of methamphetamine into the community," and had concluded that a downward variance was not warranted because there were "no factors present that separate this defendant from the mine run of similarly situated defendants," *id*. at 56.

The court then adopted the proposed offense level and guidelines range and imposed a mid-range prison sentence of 170 months. We find no abuse of discretion in the district court's rulings or in the sentence imposed. The court considered the relevant statutory factors, expressly acknowledging Garcia's mitigating evidence, including his positive criminal history score, the effect of his immigration status on his placement options, and the fact that "his impending deportation will act as a form of punishment." *Id.* But the court concluded that a 170-month sentence was nevertheless justified by Garcia's having distributed significant quantities of methamphetamine, his failure to accept responsibility for his role in the conspiracy, and his perjury at trial. The court explained that the sentence was "appropriate and reasonable" under the totality of Garcia's circumstances and that it would "serve as an adequate deterrent to this defendant, as well as others, promote respect

for the law, provide just punishment for the offense, and provide protection for the public." *Id*. at 57.

The record supports the court's findings, and we will not reweigh the evidence on appeal. *See Gall*, 552 U.S. at 51-52 (emphasizing the importance of appellate court deference to a district court's sentencing determination, explaining that the trial judge "has access to, and greater familiarity with, the individual case and the individual defendant before him," and that "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do" (internal quotation marks omitted)). When considered in context and on the record presented, we conclude that the district court did not "exceed[ ] the bounds of permissible choice," *McComb*, 519 F.3d at 1053 (internal quotation marks omitted), in imposing a 170-month sentence.

## Conclusion

The judgment of the district court is affirmed.

Entered for the Court

Allison H. Eid
Circuit Judge

14